Ligon W. BOOZER, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
the Department of Health, Education
and Welfare, Defendant.

No. CA/4316.

United States District Court
W. D. South Carolina,
Greenwood Division.

Sept. 8, 1964.

Thomas H. Pope, Robert D. Schumpert, Newberry, S. C., for plaintiff.

John C. Williams, U. S. Atty., James D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, District Judge.

This is an action asking the District Court to review a final decision of the Secretary of Health, Education and Welfare, in accordance with § 205(g) of the Social Security Act (42 U.S.C.A. § 405 (g)). The decision of the Secretary denied the plaintiff the period of disability and disability insurance benefits for which he applied.

The plaintiff met the special earnings requirements during the effective period of the application, and continued to meet such requirements through September 30, 1963. On the basis of his application filed on April 12, 1962, the evidence must establish that the plaintiff was under a disability, as defined in the Act beginning on or before July 1, 1962, for entitlement to disability insurance benefits, and on or before July 12, 1962, for establishment of a period of disability.

The question before this Court is whether or not the record reveals substantial evidence to sustain the decision of the Secretary.

I may not substitute my judgment for that of the Secretary and may not reverse the decision of the Secretary on the ground that, based on my reappraisal of the evidence, I would have reached a different result. Kraynak v. Flemming (CA 3, 1959) 283 F.2d 302; Meola v. Ribicoff (S.D.N.Y., 1962) 207 F.Supp. 658. The substantial evidence doctrine limits the scope of my review to the issue of whether, viewing the record as a whole, there is substantial evidence to support a reasoned determination of the Hearing Examiner after all the evidence supporting, as well as opposing, his conclusion has been taken into account. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Meola v. Ribicoff, supra. In such examination, however, the Court "must not abdicate the conventional judicial function." Brown v. Celebrezze (E.D. S.C., 1962) 210 F.Supp. 692, 694.

"Substantial evidence" means more than a mere scintilla—it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. of New York v. NLRB, 305 U.S., 197, 59 S.Ct. 206, 83 L.Ed. 126; Haxton v. Flemming, D.C., 183 F.Supp. 2. In order to determine the sufficiency of the evidence, in terms of the Social Security Act, the Court must scrutinize the record as a whole and the Court must assume responsibility for the reasonableness and

fairness of the decision. Shields v. Folsom, D.C., 153 F.Supp. 733; Brown v. Celebrezze, supra.

Plaintiff was born May 30, 1906. He quit school when he was in the tenth grade and went to work, first on the farm, and later in 1923, when he was seventeen years old, went to work in the carding room of a textile mill. He has worked continuously since that time in the carding room of different mills until 1958, except for three years when he drove a truck for a construction company, and when he was in the navy for one month and two days. He was medically discharged from the navy on account of flat feet. In May or June, 1958, his supervisor at the mill told him that it looked like he was not able to run his job and suggested that he take some time off. He had been in the Veterans' Hospital several different times for stomach trouble and a hernia. He did not work for about two months and then returned to work and worked until sometime in August, 1958, when he was fired because he could not meet production. He has not worked since that time.

Plaintiff says that he has a nervous condition, that he has nervous vomiting spells about twice a week, that he feels nauseated all of the time, that he gets upset at any little thing, that he avoids crowds, does not like much fuss, that he stays by himself most of the time, that his stomach feels "jumpy-like" inside, that he takes tranquilizers occasionally, they seem to quiet him for a little while, that he has ulcerated stomach which started in 1950, that he has been to the Veterans' Hospital about five times and the doctors there say that he has spasmatic stomach, that he has had arthritis in his back and legs for the last five years and sometimes in his shoulders, that it hurts and pains him and he gets stiff, that he takes Anacin for it and his wife rubs him with linament, that he has flat feet and cannot stand on his feet longer than fifteen or twenty minutes, that they feel like they are breaking in two, that they seem to be bothering him more in the last three or four years,

that he has worn steel arch supports but he has discarded them because they were not doing him any good; in 1943, when he was discharged from the navy, the doctors told him that a steel arch support would do his feet more harm than good, and after that he wore Knapp shoes that have a soft arch built in and they seemed to help him but right now he is wearing ordinary shoes; that he has poor circulation in his legs and arms; that he is dizzy and some days it is so bad he has one dizzy spell right after the other; he has an enlarged gland on the right side in his scrotum that gives him a lot of trouble.

As to his activities, he says that he helps cut the lawn but that he lies around the house most of the time watching television and reading a little, that he does not do any housework but fixes his wife's supper and helps wash the dishes. He lives with his wife who works in the sewing room of a textile mill.

The wife of the plaintiff says that her husband has been unable to work since 1950, but that he continued to work up until 1958, when he was fired by his employer because he could not meet production; that her husband was sent to the State Hospital in September, 1958, when he went "all to pieces", he attempted to commit suicide and broke-out the windows in the back room and completely demolished the furniture in the room; she says her husband is nauseated all of the time, that his mouth stays dry, that he takes tranquilizers as well as Maalox and Anacin upon doctor's orders; that he forgets and is unable to remember even for a short period of time; that he does nothing around home except to lie about the house and that he helps prepare a meal occasionally; that when she comes home from work he follows her around the house like a child.

A neighbor of the Boozer's says that she has seen Mr. Boozer regularly over the period of the last fifteen years and that she knows in the past three to four years he has been in serious physical condition and has been physically disabled to work; that she sees Mr. Boozer peri-

704

odically from time to time each week and that she knows he is physically unable to do any work of any sort around the house, in the yard or elsewhere; that during the past three to four years she has not seen him at any time do any physical work of any sort.

Plaintiff's family physician, Dr. V. W. Rinehart, in reports dated December 10, 1959, and April 26, 1962, makes the following diagnosis, ulcerated stomach, extreme nervousness, arthritis from the waist down, vertigo, sinus trouble, generalized arteriosclerosis, poor circulation in lower extremeties, and enlarged gland in right side of scrotum. He says that he sees plaintiff monthly and that his response to treatment and therapy has been poor and that in his opinion plaintiff's condition is gradually growing worse, and that he is "permanently and totally disabled for life from any work in my estimation." He further says that the plaintiff was hospitalized at the South Carolina State Hospital in Columbia, in September, 1958, for thirty days, and that since that hospitalization he has been unable to do any kind of work because of his extreme nervousness and loss of memory.

Plaintiff has been examined by Dr. Joseph E. Freed, a psychiatrist at the South Carolina State Hospital in Columbia, on two occasions at the request and expense of the Government. In his first report dated March 7, 1960, he says plaintiff was hospitalized in the State Hospital in August and September, 1958, at which time his condition was diagnosed as "affective reactions, manic depressive reaction, manic type." Dr. Freed's diagnosis is, "psychoneurotic reaction, anxiety reaction, moderately severe with cerebral arteriosclerosis." In his report dated July 11, 1962, his diagnosis is, "psychoneurotic reaction, anxiety reaction, moderate, manifested by headaches, gastric distress with vomiting."

Plaintiff was also examined by Dr. B. M. Montgomery, an internist, at the request and expense of the Government. He made the following diagnosis, psycho-neurosis, severe, with anxiety reaction and psychosomatic gastro-intestinal reaction, duodenal ulcer, by history, pes planus, marked, epididymitis, chronic, osteoarthritis of spine, mild, probable.

■ The statute, 42 U.S.C.A. 416 (i), defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." While it casts upon the claimant the burden of proving that such a disability exists, it is not expected that this burden shall be carried to a point beyond a reasonable doubt. Ollis v. Ribicoff, 208 F.Supp. 644 (W.D.N.C., 1962). There are two steps to a finding of disability, first, a finding of a "medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration", and second, a finding that the impairment in fact causes an inability to "engage in any substantial gainful activity * * *." Butler v. Fleming, 288 F.2d 591, 593 (5th Cir., 1961). But in regard to the second step, the abstract "average man" is not the criterion. The inquiry must be directed to the particular claimant, not to people in general or even claimants in general. Pearman v. Ribicoff, 307 F.2d 573 (4th Cir., 1962).

In this case plaintiff's ulcerated stomach, epididymitis, osteoarthritis of the spine, psychoneurotic reaction and anxiety reaction, with cerebral arteriosclerosis, and other impairments, are definitely medically determinable and can be expected to be of long-continued duration. 42 U.S.C.A. § 416(i) (1).

■ Dr. Rinehart, plaintiff's treating physician, gave as his opinion that plaintiff "is permanently and totally disabled for life from any kind of work". There is nothing in the record to counter the weight of this expert judgment to a finding of disability. While it cannot be considered as conclusive on the issue of plaintiff's ability to engage in substantial gainful activity, it does, reflect Dr.

Rinehart's opinion of the severity of plaintiff's impairments, the degree of their development, and the plaintiff's physical and mental capacity to resist or adapt to them.

The subjective evidence shows that the plaintiff has a nervous condition, a stomach condition, arthritis in his back and legs, flat feet, poor circulation in his legs and arms and intermittent dizzy spells, that he stays nauseated all the time and has nervous vomiting spells about twice a week, that he has an enlarged gland in the right side of scrotum which gives him a lot of trouble. This was corroborated by the testimony of his wife and by a neighbor. This evidence was not contradicted in any material particular and is consistent with the established defects in plaintiff's physical and mental condition. The record shows that plaintiff has not responded adequately to treatment and that there has been no spontaneous remission in any of his ailments.

Plaintiff quit school when he was in the tenth grade and has worked all of his life in cotton mills, except for three years when he drove a truck for a construction company and was in the navy for one month and two days. He is fifty-eight years old. The record is silent as to any possible employment which this plaintiff might undertake in his present condition. "If there is no market for the services he is able to render then he is truly disabled within the meaning of the statute." Ferran v. Flemming, (5th Cir., 1961) 293 F.2d 568, 571; Pope v. Celebrezze (W.D.N.C., 1962), 209 F.Supp. 392, 395.

The evidence in this case as to the effect of these mental and physical impairments on the plaintiff's ability to engage in any substantial gainful activity shows that the plaintiff is unable to return to his old job in the carding room of a textile mill (the type of work that he has done all of his life) and from which he was in fact discharged because of his inability to do the work, and the evidence is that plaintiff's physical and mental capabilities have not improved since that time but are gradually growing worse.

The Examiner finds that "It is quite apparent from the Veterans Administration Hospital records, Dr. Montgomery's reports and those of Dr. Freed, that the physicians who have examined the claimant feel that he is neurotic and that he has magnified his symptoms". However, as was stated in Ollis v. Ribicoff (W.D.N.C., 1962) 208 F.Supp. 644, at 648, plaintiff's "physical and *mental* capacity to resist or adapt" to his impairments is a "proper basis for evidentiary inferences on these matters." (Emphasis added) The culminating effect of these ailments upon plaintiff must be weighed solely on the basis of the effect upon this particular man, not upon what the effects might be on others. " 'The act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has.' " Brown v. Celebrezze, (E.D.S.C., 1962) 210 F.Supp. 692, 694, quoting from Klimaszewski v. Flemming, D.C., 176 F.Supp. 927; Lippert v. Ribicoff, (D.C.Cal., 1963) 215 F.Supp. 28.

After a careful examination of the record in this case and the foregoing authorities, I am of the opinion that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous. On the contrary, the conclusion that plaintiff is unable to engage in any substantial gainful activity appears self-evident to me. Plaintiff in this case is the victim of medically determinable impairments of serious and substantial proportions which can only be expected to be of long and indefinite duration. As a direct result of these impairments plaintiff has been unable since August, 1958, to follow his life-long employment in manual labor jobs in the cotton mill after having been discharged because of his inability to run the job. Plaintiff's physical and mental impairments, when considered in connection with his individual circumstances of age,

706

work experience, education, training and skill, serve to eliminate effectively, any reasonable possibility of suitable employment or employment for which plaintiff is qualified.

Under the foregoing authorities, I must conclude that the findings of the Hearing Examiner as to the establishment of a period of disability and disability insurance benefits are not supported by substantial evidence on the record considered as a whole and under the authority for appeal given by 42 U.S.C.A. § 405(g) the conclusion of the Secretary that the plaintiff was not entitled to the period of disability and the disability insurance benefits was clearly erroneous, was incorrect, and must, therefore, be reversed.

It is, therefore, ordered, that the decision of the Secretary in this case be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.