Hyman P. LEVINE, Plaintiff,

v.

Anthony CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

No. 64–C–992.

United States District Court
E. D. New York.

Nov. 16, 1965.

Stanley F. Meltzer, New York City, for plaintiff, for plaintiff's motion for summary judgment and in opposition to defendant's cross-motion for summary judgment.

Joseph P. Hoey, U. S. Atty., for defendant, by George L. Barnett, Asst. U. S. Atty., of counsel, in opposition to plaintiff's motion for summary judgment and for defendant's cross-motion for summary judgment.

RAYFIEL, District Judge.

This is an action under Section 205(g) of the Social Security Act (the Act) Section 405(g) of Title 42, U.S.Code, to review a decision of the Secretary of Health, Education and Welfare (the Secretary) denying the plaintiff's application for the establishment under the Act of a period of disability and for the payment of disability benefits. The parties have cross moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

On or about August 5, 1963 the plaintiff, claiming that he had been disabled since the preceding March 1, 1963, applied for disability insurance benefits under the Act. When his claim was denied he requested and obtained a hearing which was held on August 13 and 26, 1964. The Hearing Examiner, finding that the plaintiff was not under disability, denied his claim for benefits, and the plaintiff then appealed to the Appeals Council of the Social Security Administration which declined to review the Hearing Examiner's determination.

These are the facts. The plaintiff was born on January 1, 1911. After graduating from public elementary and high school he attended college for a period of three years, taking courses in accountancy, economics and business law. For several years thereafter he was employed for various periods as a saleman, stock clerk or window-dresser and on or about November 20, 1940 he entered the employ of the Department of Labor of the State of New York as an investigator, where he remained until his retirement on April 8, 1964, on which date he filed an application for "ordinary disability retirement." On May 13, 1964 the New York State authorities, having found him to be "physically incapacitated for the performance of duty *as investigator * * * or similar duties*", (emphasis supplied) approved his application.

For approximately twelve years next preceding the filing of his application for retirement from the Labor Department of the State of New York the plaintiff was self-employed, part-time, as an accountant. On or about the date of such filing he transferred most of his accounting practice to his son, who left his then employment in that profession to engage in practice on his own account, maintaining his office in the plaintiff's home, where he also resided.

The plaintiff stated that since April, 1963, aside from occasional discussions of accountancy matters with his son, he was only minimally active in that field. He testified that on or about March 1, 1963 he became unable to continue his work because of pains in his shoulder, shortness of breath, and chest pains following exertion, walking for distances in excess of two or three blocks, and cold weather. Since that date he has been

inactive most of the day, spending his time reading, watching television, driving his car or walking for short distances.

The medical evidence submitted in behalf of the claimant consisted of five reports of Dr. Jerome F. Schaeffer, bearing dates between August 17, 1963 and April 30, 1964, and a report of the Adelphi Hospital covering his confinement there from April 27, to May 31, 1963. Dr. Schaeffer's report of August 17, 1963 shows that he first saw the claimant on March 20, 1962, when he suffered a coronary thrombosis, and saw him monthly thereafter until July 11, 1963; that his examination of the claimant disclosed a cardiac enlargement and evidence of extensive anterior wall infarction and myocardial damage. His diagnosis was: arteriosclerotic heart disease. He treated the claimant symptomatically with fair response and found· his condition static. He found that his functional and therapeutic classification (American Heart Association) was "Class III C". On the basis of his findings and information obtained from the claimant he directed that he be restricted to sedentary activity.

Subsequent reports of Dr. Schaeffer dated November 27, 1963, January 30, 1964 and March 23, 1964 refer to the claimant's hospitalization for myocardial infarction at the Adelphi Hospital from March 20, 1962 to April 11, 1962 and a second period of confinement at the same hospital between April 27, 1963 and May 31, 1963, and express the opinion that the claimant, who had been under his care for some two years, was completely disabled as a result of the said heart attacks.

In his report of April 30, 1964, Dr. Schaeffer states that dyspnea occurs on moderate effort such as hurried walking for two or three blocks, that the claimant was subject to attacks of angina once or twice a week, lasting for from five to ten minutes, from which he obtained relief by the use of nitroglycerin; and that there were no other symptoms of lowered cardiac reserves such as arrhythmia, cyanosis, syncope or dizziness. He stated further that while he thought the claim-

ant should discontinue activity which would subject him to stress he could engage in work of a relative sedentary nature.

The Adelphi Hospital report of his confinement there between April 27 and May 31, 1963 shows that he had had an acute coronary thrombosis and he suffered an extensive anterior wall infarct, from which he made an uneventful recovery.

Dr. Seymour S. Cutler, a cardiologist, whose report was submitted by the Secretary, examined the claimant on November 15, 1963. His report stated that beginning in March, 1962 the claimant experienced shortness of breath, unaccompanied by pain, following walking for a distance; that he consulted a physician, who informed him that he had "an abnormal heart" and arranged for his confinement at Adelphi Hospital for a period of 4 weeks, and that following a period of . convalescence after his discharge from the hospital he returned to his work in June, 1962, and continued to work until February, 1963; that, noting that in cold weather he suffered from dyspnea, he discontinued work until April, 1963, when he returned, but continued at work only until April 27, 1963, when he collapsed following severe chest pains, and was again admitted to Adelphi Hospital, where he remained for about 5 weeks. He has not worked since.

Dr. Cutler further reported that the claimant had informed him that at his home he could ascend one flight of stairs without symptoms, walk as much as six blocks without angina and with only a brief (10 seconds) shortness of breath, and that after a few deep breaths he was able to continue walking; that he suffered no chest pains during or following periods of emotion or with coition.

Dr. Cutler's report, following a statement of the nature of his examination of the claimant and his findings thereon, expressed the opinion that the claimant sustained 2 myocardial infarctions from which he has made an excellent functional recovery within the limits of the restricted life he now leads; that angina does

not occur, that there is no congestive failure or enlargement of the heart; that the symptoms which he now describes are not cardiac in origin since the pains complained of are of a skeletal anterior chest-wall type, and are not referable to coronary insufficiency; and that the few deep breaths he takes after extensive walking do not represent dyspnea resulting from exertion.

Dr. Cutler reported further that on a restricted routine the claimant "demonstrates no cardio-vascular or respiratory symptoms", and that while over-exertion resulting from walking greater distances, climbing more than one flight of stairs or working at a greater and sustained pace might produce symptoms, there is presently no reason to restrict himself to an excessively protected routine. On examination the claimant's back, Dr. Cutler reported, showed no signs of functional or structural incapacity.

In a supplemental report Dr. Cutler stated that there was no angina, heart enlargement or congestive heart failure; no dyspnea, retinal or cerebral involvement or renal failure, and that the claimant was able to sit, stand or bend without difficulty.

The Hearing Examiner called as a witness Dr. Charles K. Friedberg, Chief of Cardiology at Mount Sinai Hospital, New York, author of a number of medical books, including "Diseases of the Heart", which has been translated into many languages. After being provided with the documentary medical evidence hereinabove referred to, Dr. Friedberg expressed the opinion that the claimant's heart impairment is rated at 30 per cent at most, that his ordinary physical activity should not be restricted, but that he should be advised against severe or competitive physical activity, and that sedentary work would not increase the likelihood of another myocardial infarct. His conclusion, based in part on statements made by the claimant, was that the latter should lead "as near a normal life as possible with due acknowledgment of the fact that he might from time to time have a discomfort *which can be readily over-come by resting momentarily or taking a drug.*" (Emphasis supplied.)

Dr. Leonard who qualified as an expert in vocational counseling and job placement service, and who was present during the hearing and had read the aforementioned documentary evidence, testified that the claimant, for some time prior to November 5, 1963, and thereafter, was able to perform work in 87 different jobs which he named and described. He referred, he said, only to jobs of a sedentary nature, which would not involve strenuous physical exertion, or extensive walking or climbing of stairs. He excluded jobs of a boring or tedious character or those which presented hazards. He stated that all the jobs which he named and described were defined in the Dictionary of Occupational Titles prepared by the Division of Occupational Analysis, U. S. Employment Service, Department of Labor, and were available in substantial numbers in the New York City area.

Subdivision (c)(2) of Section 223 of the Act (Section 423 of Title 42, U.S. Code) defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Upon the foregoing facts, and such additional proof, not hereinabove referred to, as was disclosed by the reports of Drs. Schaeffer and Cutler and the testimony of Dr. Friedberg and Dr. Leonard, the Hearing Examiner found that the claimant had failed to establish that he had an impairment or combination of impairments of indefinite duration and of such severity as to prevent him from engaging in any substantial gainful activity at the time he filed his application. Accordingly, he concluded that the claimant was not under a disability within the meaning of Section 216(i) of the Act (Section 416 (i) of said Title) and denied his application to establish a period of disability and his concurrent application for disability insurance benefits.

His findings and conclusions were based, in part only, on (1) the statement in the report of Dr. Schaeffer, the claimant's own physician, who had him under observation and treatment for a long time, that the claimant's activity should be restricted to "sedentary activity only", (2) Dr. Cutler's opinion that there was "no reason for him (the claimant) to restrict himself to his present overly-protected routine", (3) Dr. Friedberg's opinion that ordinary physical activities by the claimant were not to be avoided and that sedentary or light work was not contraindicated and would not increase the likelihood of another myocardial infarct, and (4) Dr. Leonard's opinion that on the basis of the claimant's age, education, vocational experience and physical impairment there were 87 types of jobs available in substantial numbers in the New York metropolitan area in which the claimant could engage. It is interesting to note that a few days prior to the hearing herein the claimant appeared personally in behalf of a client at a conference respecting an application for a tax refund, where he spent some three hours.

 The authorities cited by counsel for the claimant were carefully examined and found to be factually distinguishable from the case at bar. Consideration has also been given to the fact that, as hereinabove stated, the claimant was granted disability retirement by the State of New York, and that Maccabees Mutual Life Insurance Company, which had issued an insurance policy on his life, had waived the payment of premiums thereon. Neither fact is controlling in the determination of claimant's application for disability insurance, which is governed solely by the standards provided in the Act.

It is well established that a claimant of disability insurance benefits under the Act has the burden of establishing his eligibility therefor—his disability, as that term is defined thereunder, as well as the required period thereof. Adams v. Flemming, 2 Cir., 276 F.2d 901. He has failed to meet that burden.

In reviewing the Secretary's findings and conclusions herein the Court's sole function is to determine whether the record discloses that there is substantial evidence to support the same. I believe there is. In such event they are conclusive. (Section 205(g) of the Act, 405(g) of Title 42, U.S. Code.)

In view of the foregoing the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.

Settle order on notice.