Louis FUERST, et al., Plaintiffs,

v.

**SECRETARY OF HEALTH, EDUCA-TION AND WELFARE, Defendant.**

**No. 70 Civ. 5757.**

United States District Court,
S. D. New York.

Feb. 14, 1973.

Abraham M. Spilky and Robert M. Spilky, Brooklyn, N. Y., for plaintiffs.

Joseph P. Marro, Asst. U. S. Atty., New York City (Whitney North Seymour, U. S. Atty., of counsel), for defendant.

## MEMORANDUM

BAUMAN, District Judge.

This is an action brought under § 205(g) of the Social Security Act, 42 U. S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying plaintiffs disability benefits under 42 U.S.C. §§ 416(i) and 423. Both sides have moved for summary judgment, and I am satisfied that there is no genuine issue of material fact to be tried.

The claimant, Leah Fuerst, was born on April 12, 1939. After her college graduation she was employed as a full time teacher from 1960 to 1963. Starting in September, 1964 she taught part time only, in order to give greater attention to her children, the first of whom had been born in 1963 and the second in

1964. (Tr. 52).[1] She held her last position, as a Hebrew teacher at the Prospect Heights Jewish Center High School, from September, 1967 to April 30, 1969, earning during the latter school year between $190 and $197 per month.

Early during the 1968 summer recess, Mrs. Fuerst was admitted to the James Ewing Hospital, New York City, with carcinoma of the left breast and a radical mastectomy was performed. Some two weeks later she was discharged from the hospital, but her fate seems by then to have been sealed.

On May 7, 1969, Mrs. Fuerst was admitted to the Beth Israel Medical Center for further surgery where a bilateral oophorectomy[2] and a bilateral adrenalectomy[3] were performed. She was discharged on June 6, 1969 with the recommendation that she undergo cobalt therapy. (Tr. 60–62).

Mrs. Fuerst's treating physician noted in a report dated November 11, 1969, that she had not responded to the second operation, and stated that she was totally disabled. She died on June 2, 1970.

The Fuerst family's journey through HEW's bureaucratic maze began October 30, 1969, when Mrs. Fuerst filed an application for the establishment of a period of disability and for disability insurance benefits alleging that she had become unable to work that April. Her application was granted and her period of disability was found to commence on May 2, 1969. She then filed a request for reconsideration on December 19, 1969, asking that her disability starting date be fixed in June, 1968, following her first operation. Some functionary gifted with a combination of divine guidance and a computerized mind moved the onset date of her disability from May 2 to April 30, 1969.

Mrs. Fuerst then sought, on April 4, 1970, to have her application reviewed *de novo* by a hearing examiner of the Department's Bureau of Hearings and Appeals. Acting with all deliberate speed the hearing was held in August, 1970, by which time she had died, and her husband made a brief presentation at the hearing. On September 9, 1970, the hearing examiner's decision fixed the onset date at June 15, 1968. Although the amount involved was $3,000, the Appeals Council of the Department, jealous guardians of the public purse, *on its own motion* decided that such action required review. On November 4, 1970, it reversed the hearing examiner and established the onset date as April 30, 1969. This decision is the final decision of the Secretary of Health, Education and Welfare of which review is sought here.

Unfortunately, the sole question before this Court is whether the decision of the Secretary fixing the onset date of the disability is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Gold v. Secretary of HEW, 463 F.2d 38 (2nd Cir. 1972); Franklin v. Secretary of HEW, 393 F.2d 640 (2nd Cir. 1968); Kerner v. Flemming, 283 F.2d 916 (2nd Cir. 1960).

The relevant provisions of 42 U. S.C. § 423, set out in the margin,[4] state,

---

1. References preceded by "Tr." refer to the Certified Administrative Record filed with this Court.

2. Removal of the ovaries.

3. Removal of the adrenal glands.

4. 42 U.S.C. § 423 provides, in pertinent part:
"(a)
(1) Every individual who—
(A) is insured for disability insurance benefits (as determined under subsection (c)(1) of this section)
(B) has not attained the age of sixty-five,
(C) has filed application for disability insurance benefits, and
(D) is under a disability (as defined in subsection (d) of this section),
shall be entitled to a disability insurance benefit. . . .
* * * * *
(d)
(1) The term 'disability' means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physi-

in essence, that a claimant must meet a twofold test in order to qualify for disability benefits. First, he must demonstrate a "medically determinable physical or mental impairment,", and second, he must show that this impairment prevents him from engaging in substantial gainful activity. See Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Harris v. Richardson, 450 F.2d 1099 (4th Cir. 1971).

■ It is undisputed that breast cancer, from which the claimant died less than two years after its first diagnosis, is a medically determinable impairment.[5] Nevertheless, it is well settled that if a person works during the so-called period of disability rather than just sitting waiting for death, this may demonstrate a capacity to engage in substantial gainful employment in spite of the medical evidence. See Simmons v. Celebrezze, 362 F.2d 753 (4th Cir. 1966); 20 C.F.R. § 404.1532(a). For example, in Price v. Richardson, 443 F. 2d 347 (5th Cir. 1971), the claimant suffered from terminal cancer for five years prior to his death. Although he was unable to engage in strenuous physical activity, he came to work six days a week, and supervised the daily operations of the meat processing business he owned. The Court thus found that even though he bore the burden of a terminal illness, the claimant was engaged in substantial gainful activity. Consequently, in the case at bar, a mere demonstration of the gravity of Mrs. Fuerst's affliction does not entitle her to disability benefits.

■ In light of the circumstances of this claimant's employment, I am constrained to find that during the year in dispute she was engaged in substantial gainful activity. In reaching such a conclusion I need not rely on the provision of 20 C.F.R. § 404.1534(b),[6] promulgated pursuant to 42 U.S.C. § 423(d)(4),[7] which states that earnings in excess of $140 per month are deemed to demonstrate a capacity to engage in substantial gainful activity. There has been considerable confusion over the precise meaning of the "unless" clause in that regulation; see Hedge v. Richardson, 458 F.2d 1065 (10th Cir. 1972) and Wilson v. Richardson, 455 F.2d 304 (4th Cir. 1972). But in deciding this motion I need not reach the question of whether Mrs. Fuerst's work falls within that ill defined exception or whether her salary of at least $190 per

---

cal or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

    *      *      *      *      *

(2) For purposes of paragraph (1)(A)—
(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ."

5. Mrs. Fuerst's condition falls within 20 C.F.R. § 404, Subpart P, § 13.00—"Neoplastic Diseases—Malignant."

6. 20 C.F.R. § 404.1534(b) provides:
"(b) An individual's earnings from work activities averaging in excess of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in §§ 404.1532 and 404.1533 and paragraph (a) of this section."

7. 42 U.S.C. § 423(d)(4) provides:
"The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. Notwithstanding the provisions of paragraph (2), an individual whose services or earnings meet such criteria shall, except for purposes of section 422(c) of this title, be found not to be disabled."

month in 1968-1969 school year in itself precluded her claim.

█ The plaintiffs' claim here must fail simply because there is no evidence that the work in which Mrs. Fuerst engaged prior to June 26, 1968 differed in any respect from the work she did in the following school year. Since 1964 she had taught on a part time basis, and continued to do so in 1968-1969. Actually, her teaching load was heavier at the Prospect Heights Jewish Center in 1968-1969 than it had been in the previous year. Her Work Activity Report (Tr. 45-48) indicates that in 1967-1968 she taught 50 minutes per day, 4 days per week, and that in 1968-1969 she taught more than twice that—100 minutes per day, 5 days per week. The language of 42 U.S.C. § 423(d)(2)(A), supra at footnote 4, suggests that a disability claimant must at the very least be unable to engage in his previous work. All of the reported cases, moreover, uphold this threshold requirement. Carden v. Gardner, 352 F.2d 51 (6th Cir. 1965); Mark v. Celebrezze, 348 F. 2d 289 (9th Cir. 1965); Alsobrooks v. Gardner, 357 F.2d 110 (5th Cir. 1966); Hicks v. Flemming, 302 F.2d 470 (5th Cir. 1962).

█ I am not confronted here, as in *Carden,* with a mere theoretical capacity to engage in a former occupation; Mrs. Fuerst did in fact continue to teach as she had for the previous five years. Although we cannot know her psychological motivation for going on or the agonies she suffered in that last year, there is thus no evidence that she was "disabled" by her affliction as that word has come to be defined. In evaluating the extent of a disability, courts may properly look to a claimant's physical and mental capacity to adapt to impairments (see Boozer v. Celebrezze, 238 F.Supp. 701 (W.D. South Carolina 1964); Ollis v. Ribicoff, 208 F.Supp. 644 (W.D. North Carolina 1962)), but not to his

courage and will to go on serving to the end. The Court cannot help but feel that something is wrong here—that the HEW rules would have been incorporated in a Kafka novel had they existed then. But the remedy must be provided by an agency with a heart or the Congress—not by the Courts.

In their moving papers claimants virtually concede that Mrs. Fuerst's activities failed to meet the statutory standard. They argue instead that her work in 1968-1969 cannot be deemed substantial gainful activity because it was primarily therapeutic. They contend further that the Appeals Council failed to consider a letter by Mrs. Fuerst's physician, Dr. Joseph Farrow, that he had recommended that she return to work for psychological reasons. Whether or not the Council considered the letter is, as the law stands, immaterial. Only one case, Prevette v. Richardson, 316 F. Supp. 144 (D. South Carolina 1970), can reasonably be invoked to support it, and even that case is distinguishable. In *Prevette* the claimant who was suffering from arteriosclerotic heart disease had testified that he worked because it provided an outlet for his energies and was essentially therapeutic. There is no indication, however, that this factor was dispositive; the Court found that the claimant could work no more than two or three hours at irregular intervals and held, quite properly, that this did not constitute substantial gainful activity. I can therefore find no authority, either in the statute or the reported cases, to support plaintiffs' argument, and I must reject it.

I therefore find that the Secretary's decision was supported by substantial evidence. Accordingly, plaintiffs' motion for summary judgment is denied, and defendant's motion for summary judgment is granted. Defendant's application for costs and disbursements is denied.[8]

It is so ordered.

8. I must observe, in concluding, that the Government's application for costs and disbursements is at best a thoughtless addendum and at worst a flagrant demonstration of bad taste.