Shelly **MARBURY**, Plaintiff,

v.

F. David **MATTHEWS**, Secretary of Health, Education and Welfare, Defendant.

No. Civ. 75–509.

United States District Court, W. D. New York.

July 1, 1977.

Mark A. Hulnick, Buffalo, N. Y., for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y., James A. Fronk, Asst. U. S. Atty., Buffalo, N. Y., of counsel, for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff instituted this action pursuant to section 205(g) of the Social Security Act ("the Act") as amended, 42 U.S.C. § 405(g), to obtain judicial review of an administrative decision of the Secretary of Health, Education and Welfare ("the Secretary") which denied plaintiff's claim for disability insurance benefits. The Secretary has answered and has moved for summary judgment or for dismissal pursuant to Fed.R. Civ.P. rule 12(b)(6).

On September 6, 1974 plaintiff applied for a period of disability and for disability insurance benefits, alleging that he had been unable to engage in any substantial gainful work since June 16, 1974. The Social Security Administration ("the Administration") denied this application October 12, 1974 and, following plaintiff's request for reconsideration, such findings were affirmed by the Administration's Bureau of Disability Insurance. On January 16, 1975 plaintiff requested a hearing which was held April 10, 1975. At the hearing, plaintiff appeared pro se, testified on his own behalf, and did not call any witnesses to support his position. Dr. Oliver Bateman, an internist, and Roy H. Fabry, a vocational expert, testified in advisory capacities. Both were under contract with the Administration. It should be noted at this juncture that the plaintiff was never examined by either Dr. Bateman or any other Administration doctor. The Administrative Law Judge denied plaintiff's application in a decision rendered May 28, 1975. This determination became the final decision of the Secretary when it was affirmed by the Appeals Council September 23, 1975.

Plaintiff's claim for disability insurance benefits is based primarily upon his diagnosed condition of pseudotumor cerebri (benign intracranial hypertension) and its accompanying symptoms of papilledema (swelling of the retina at the optic disc), headaches, dizziness and brief memory lapses. Plaintiff complained also of high blood pressure, backache and vision problems.

The record indicates that plaintiff was hospitalized on six occasions since the onset of his medical problems. He was admitted to Edward J. Meyer Memorial Hospital May 31, 1970 for vision deterioration, headaches, ear discharge and dizziness, and remained as a patient until June 19, 1970. Dr. Bernard Smith, head of Meyer's neurology department, diagnosed the plaintiff's medical problems as pseudotumor cerebri, mild proptosis of the left eye and thrombosis of the right transverse sinus. Plaintiff returned to Meyer Hospital July 22, 1970 for the surgical removal of a dermoid cyst from the left orbit and apparently made a complete recovery from the operation.

On October 9, 1973, plaintiff was examined at Meyer's eye clinic for complaints of headaches, blurring of vision and spots before his eyes. Neurological examination revealed bilateral papilledema and it was recommended that plaintiff be admitted for re-evaluation as soon as possible. Consequently, plaintiff was again hospitalized at

Meyer for the period between November 4 and 20, 1973. Plaintiff's then medical condition was diagnosed as pseudotumor cerebri and chronic otitis media which caused a discharge from the left ear. Progress notes from Meyer show that plaintiff made occasional visits between June 24, 1970 and October 23, 1974, mainly because of problems he was experiencing with his vision and recurring headaches.

Plaintiff was admitted to the Buffalo Veteran's Administration Hospital from January 14 to January 22, 1974 with complaints of lower back pain. The physical examination revealed that the plaintiff was able to walk, stand on both feet, walk on his toes and heels, sit with ease and move around in bed. The diagnosis was that he suffered from acute and chronic low back strain. Although at the time of his discharge, the plaintiff had markedly improved, the examining physician considered him not then employable.

Plaintiff was again admitted to the Buffalo Veteran's Administration Hospital from February 12 to February 22, 1974 because of severe persistent frontal headaches, accompanied by bilateral papilledema and hypertension. His stay at the hospital was uncomplicated and his headaches resolved on taking APC tablets. A consultant in neurology, who had extensive knowledge of plaintiff's personal life, suggested that the headaches could be psychosomatic in nature. The examining physician concluded that a psychosomatic etiology was likely because plaintiff was a somewhat anxious individual dissatisfied with his job and his headaches resolved during his hospital stay but had been severe and persistent while he was working.

After his last day of employment plaintiff was admitted to Deaconess Hospital from June 22 to June 28, 1974 with complaints of chronic headache, occasional instability while walking, brief memory lapses, and sensations in his legs after long periods of standing. His condition was again diagnosed as bilateral papilledema and hypertension.

Dr. Robert Lee, Jr., an internist who has treated the plaintiff from March 24, 1974 to the present, submitted a medical report subsequent to the hearing at the request of the Administrative Law Judge. He diagnosed plaintiff's medical problems as hypertensive vascular disease, pseudotumor cerebri, bilateral papilledema and low back syndrome. As of November 15, 1974, he estimated that the plaintiff could walk for two to three hours, stand in a stationary position for one to two hours, sit in one spot for one to two hours, and lift and carry 25 to 30 pounds.

Dr. Robert H. Zahm, a psychiatrist and medical director of Monsignor Carr Institute, reported that plaintiff underwent a psychiatric evaluation March 15, 1974. Dr. Zahm evaluated plaintiff's medical problems as caused by physical conditions, specifically neurological abnormalities, rather than psychological deficiencies. It was also noted by Dr. Zahm that certain life stresses, including demands at work, aggravated plaintiff's existing condition and caused increased pain.

Plaintiff testified at the hearing that his symptoms persist, that he receives regular, periodic medical examinations, and that he currently takes a variety of drugs to relieve such symptoms. He stated he had been unable to take certain medication for his severe headaches because of accompanying side effects and that the effectiveness of the medication he continued to use was substantially less than it had been. Moreover, plaintiff testified that since he left his job at Ford Motor Corporation his headaches were more severe, occurred more frequently and were of greater duration, with some lasting for days even when he took his medication, but he noted that the flickering in his eye and the memory lapses have subsided and occur only occasionally.

In order to assist the Administrative Law Judge in ascertaining the functional impact of the plaintiff's diagnosed conditions, Dr. Bateman was called as a medical advisor at the hearing. Based upon a review of the medical records and taking into account the plaintiff's testimony, Dr. Bateman assessed plaintiff's various impairments in terms of

their character, symtomatology and functional limitations. He testified that pseudotumor cerebri was a condition which involved swelling of the brain due to infiltration by lymphocytes. It was his opinion that such condition generally runs its course and is asymptomatic in six to eight months. He noted that because of the extended period of plaintiff's condition, there was a possibility of arachnoiditis, which involves an inflammation of the covering of the brain. Dr. Bateman stated that the plaintiff had lost confidence in himself and that there was substantial psychic overlay with respect to the recurrent headaches, which he concluded were caused by tension.

It is significant that Dr. Bateman conceded that plaintiff's statements with respect to the frequency, intensity and duration of his headaches were consistent with the documented medical records. Yet, he concluded that the headaches were moderate and would yield to medication. He stated that the plaintiff suffered from a mild anxiety neurosis and thought that his hypertension, with its accompanying dizziness and headaches, was not a functional limitation because such condition and its manifestations were *probably* being controlled in an acceptable fashion by the medication. He noted that the drugs taken by the plaintiff decrease alertness and cause drowsiness.

In addition to his testimony, Dr. Bateman completed a Functional Residual Capacity Report in which he concluded that plaintiff's employment activities should be restricted to lifting 100 pounds for only four hours per day and that he should not work at unprotected elevations, under production stress, around dust, fumes or skin irritants, in sudden temperature or humidity changes, or in excessive noise.

In addition to the medical evidence adduced at the hearing, Mr. Fabry testified as a vocational expert. He concluded that plaintiff could not engage in any of his former occupations, but asserted that he could perform light sedentary work which would not demand alertness—such as a polisher in the jewelry industry or a machine cleaner. Based upon plaintiff's functional capacity as estimated by Dr. Bateman, Mr. Fabry opined that plaintiff could perform various jobs—such as file clerk, offset duplicating machine operator, cashier, and key punch operator—and that such jobs existed in both the national economy and the Buffalo area.

■ The scope of judicial review of the Secretary's decision is limited. *Franklin v. Secretary of Health, Education and Welfare*, 393 F.2d 640 (2d Cir. 1968). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides that the findings of the Secretary, if supported by substantial evidence, are conclusive. The issue then before this Court is whether the decision of the Secretary denying plaintiff's claim for disability benefits is supported by substantial evidence on the record as a whole. *Fuerst v. Secretary of Health, Education and Welfare*, 354 F.Supp. 185 (S.D.N.Y.1973).

The Supreme Court has construed substantial evidence to be "more than a mere scintilla [,] * * * such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). When this standard has not been satisfied, courts have not hesitated to reverse the Secretary's decision. *Williams v. Finch*, 440 F.2d 613 (5th Cir. 1971); *Ber v. Celebrezze*, 332 F.2d 293 (2d Cir. 1964).

■ Section 223(d)(2)(A) of the Act, 42 U.S.C. § 423(d)(2)(A), provides that an individual is disabled if his physical or mental impairments are of such severity that he cannot, taking into consideration his age, education and work experience, engage in any substantial gainful work. The four elements of proof to be considered in determining whether a claimant is disabled within the meaning of the Act are (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, such as the claimant's testimony, and (4) the claimant's age, education and employment history. *DePaepe v. Richardson*, 464 F.2d 92, 94

(5th Cir. 1972); *Underwood v. Ribicoff,* 298 F.2d 850, 851 (4th Cir. 1962).

It should be noted at this point that working during the alleged disability period may demonstrate a capacity to engage in substantial gainful employment. *Fuerst v. Secretary of Health, Education and Welfare, supra,* at 187. In the present case, plaintiff only alleges a period of disability subsequent to his last day of employment. In addition, the determination by a private insurance company that plaintiff is disabled is not controlling. The Secretary's decision on a claimant's application for disability insurance benefits is governed solely by standards set forth in the Act. *Levine v. Celebrezze,* 247 F.Supp. 539, 543 (E.D.N.Y.1965), *aff'd sub nom. Levine v. Gardner,* 360 F.2d 727 (2d Cir. 1966).

In the instant case, the Administrative Law Judge placed heavy reliance on the testimony and opinion of Dr. Bateman, a physician who did not examine plaintiff. It is appropriate to accept the opinion of such a medical advisor when it does not differ from the medical reports of examining physicians. *Richardson v. Perales, supra,* 402 U.S. at 408, 91 S.Ct. 1420. When contrary to such reports, however, the opinions of a nonexamining medical advisor do not constitute substantial evidence unless his opinions are supported by findings or opinions of an examining physician. *Ehrenreich v. Weinberger,* 397 F.Supp. 693, 697 (W.D.N.Y.1975); *Martin v. Secretary of Dept. of Health, Ed. & Welfare,* 492 F.2d 905 (4th Cir. 1974); *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir. 1974); *Mefford v. Gardner,* 383 F.2d 748 (6th Cir. 1967). Thus, the record must be scrutinized to ascertain whether Dr. Bateman's opinions are supported by the medical reports of plaintiff's attending physicians. I find that his opinions do not find support therein.

Dr. Bateman's opinion with respect to the psychological basis of plaintiff's condition is in direct conflict with the conclusion of Dr. Zahm, who, after plaintiff was examined at the Monsignor Carr Institute, stated that his problems were physical rather than psychological. In addition, the Functional Residual Capacity Report prepared by Dr. Bateman is contrary to a similar report prepared by Dr. Lee, a physician who has examined and treated the plaintiff since March, 1974. Dr. Bateman further testified that plaintiff's symptoms should disappear within six to eight months. Such testimony directly conflicts with the objective medical evidence in the record that plaintiff's condition has continued for a number of years necessitating six hospital visits and regular medical attention. Dr. Bateman's conclusion that plaintiff's headaches are moderate and *probably* controlled by medication is unsupported by any findings or opinions of an examining physician and directly conflicts with the plaintiff's testimony that he suffers from severe, persistent and lengthy headaches even though he is taking prescribed medication. The subjective element of pain is an important factor to be considered in determining disability. *Ber v. Celebrezze, supra.* Dr. Bateman conceded that plaintiff's testimony with respect to the severity of his headaches was consistent with the medical evidence in the record. The opinions of a doctor who never examined or treated the plaintiff cannot serve as substantial evidence to support the Secretary's decision when such opinions are unsupported by objective medical facts, conflict with the opinions of examining physicians and are contrary to uncontroverted subjective evidence. Therefore, I conclude that the Secretary's finding that plaintiff was not disabled within the meaning of the Act was not supported by substantial evidence.

Pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g), a district court reviewing a final decision of the Secretary may either affirm, modify or reverse such decision with or without remanding to the Secretary for a rehearing. Because the Secretary's decision as to the ultimate finding of disability was not based on substantial evidence, it hereby is reversed.

Plaintiff, however, has the ultimate burden of persuasion to show that he is disabled within the meaning of the Act.

*Franklin v. Secretary of Health, Education and Welfare, supra,* at 642. The objective medical evidence in the record, the opinions of plaintiff's examining physicians and his subjective testimony at the hearing are insufficient to establish by substantial evidence the degree of plaintiff's functional impairment attributable to his diagnosed medical conditions. This lack of evidence as to the functional impact of plaintiff's medical infirmities can partly be explained by what appears from the transcript of the hearing to be plaintiff's lack of understanding as to the burden placed upon him to show that he is disabled from his medical afflictions. Because there is insufficient evidence showing the degree and severity of plaintiff's functional impairments caused by his diagnosed conditions, in addition to the lack of substantial evidence supporting the Secretary's decision, the instant case should be remanded to the Secretary to take additional evidence on the severity of plaintiff's infirmities and their impact on his functional abilities.

It is therefore hereby

ORDERED that defendant's motion for summary judgment is denied and the cause is remanded to the Secretary pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g), in order to take additional evidence on the severity of plaintiff's physical and mental condition and his functional ability to engage in any substantial gainful work.