Joanne O. EHRENREICH, Plaintiff,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare of the United States of America Social Security Administration, Washington, D. C., Defendant.

No. Civ. 74–12.

United States District Court, W. D. New York.

June 27, 1975.

Bernard B. Freedman, Civil Case Div., The Legal Aid Bureau of Buffalo, Inc., Buffalo, N.Y., for plaintiff.

Richard J. Arcara, U.S. Atty. (James A. Fronk, Buffalo, N.Y., of counsel), for defendant.

CURTIN, Chief Judge.

This is an action brought under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for widow's insurance benefits based on disability under §§ 202(e) and 223(d) of the Act, 42 U.S.C. §§ 402(e) and 423(d). Plaintiff filed an application for disabled widow's insurance benefits on November 26, 1971 alleging that she became unable to work in April, 1963 at age 49. Since plaintiff attained

the age of 60 on November 14, 1973, her prescribed period of eligibility extended from November, 1971 to October 31, 1973. After a hearing before an administrative law judge, a decision was filed on September 5, 1973 holding that the plaintiff was not under a disability. The Appeals Council approved the decision of the administrative law judge on November 8, 1973 and this lawsuit followed. The case is now before the court on motions of both plaintiff and defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

■ To qualify for benefits as a disabled widow under the Social Security Act, a claimant must establish that she is at least 50 years of age, that she is the widow of a wage earner who died fully insured, and that she is under a disability. 42 U.S.C. § 402(e). A widow shall not be deemed to be under a disability unless

. . . his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity. 42 U.S.C. § 423(d)(2) (B).

Pursuant to 42 U.S.C. § 423(d), the Secretary promulgated Social Security Administration Regulation No. 4, 20 C.F.R. § 404.1504, which provides that a widow shall be determined to be under a disability *only if*

(a) His or her impairment or impairments meet the duration requirement in § 404.1501 and are listed in the appendix to this subpart; or

(b) His or her impairment or impairments are not listed in the appendix to this subpart, but singly or in combination meet the duration requirement in § 404.1501 and are determined by the Secretary to be medically the equivalent of a listed impairment.

The determination of a disability for disabled widow's benefits is therefore concerned solely with the severity of the impairment. *Truss v. Richardson,* 338 F.Supp. 741 (E.D.Mich.1971); *Hendrix v. Finch,* 310 F.Supp. 513 (D.S.C.1970). In contrast, 42 U.S.C. § 423(d)(1)(A) (disability insurance) also requires consideration of plaintiff's age, educational background and work experience. *Underwood v. Ribicoff,* 298 F.2d 850, 851 (4th Cir. 1962). Further, under 42 U. S.C. § 423(d)(2)(B), a widow must establish that she is precluded from engaging in "any gainful activity," whereas under 42 U.S.C. § 423(d)(1)(A) a claimant must only establish inability to engage in "any substantial gainful activity."

■■ The scope of judicial review of the Secretary's decision is limited. 42 U.S.C. § 405(g) provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Under this standard, the reviewing court may not try the case de novo and substitute its findings for those of the Secretary. *Flack v. Cohen,* 413 F.2d 278, 279 (4th Cir. 1969). Where, as here, there is conflicting medical evidence, the Secretary must resolve such conflict. Therefore, the single issue now before the court is whether the Secretary's decision is supported by substantial evidence.

The record in this case reveals the following facts which are not in dispute. Plaintiff testified at the hearing that she had been unable to work since 1963 due to a heart condition, a spastic colon, tension, depression, severe backaches, severe headaches, incontinence and shortness of breath. Nonetheless, after the alleged onset of her disabilities, plaintiff worked as a legal and medical secretary between 1963 and 1965. During her period of eligibility (11/71—10/31/73), although she received some assistance from relatives, plaintiff was physically able to take care of her personal and basic household needs. To control her various conditions, plaintiff testified that she takes numerous medications: Vitamin B and B–12, Hematonic, Elavil, Val-

ium, Delmane, Darvaceten, Tylenol, Codeine and Nitro, and wears a cervical collar to lessen her headaches. Plaintiff also testified that on her September, 1972 motor vehicle operator's license renewal, she did not indicate any heart disease and no restrictions were placed on her license.

Plaintiff was hospitalized at Kenmore Mercy Hospital from August 5 to August 21, 1966. Dr. Norman Chassin, an internist, was plaintiff's attending physician. Dr. Chassin diagnosed coronary vessel disease with insufficiency, spastic colon and possible hypothyroidism. In a written report dated October 11, 1972, Dr. Chassin indicated that the plaintiff was under his care for angina, mental depression, incontinence and low back pain. Dr. Chassin did not furnish any clinical or laboratory findings with this report; however, he did state that plaintiff was "not able to work."

On January 14, 1973 through January 24, 1973, plaintiff was again hospitalized at Kenmore Mercy Hospital. Dr. Narasi, her attending physician, diagnosed vertebrobasilar insufficiency secondary to cervical spondylosis, arteriosclerotic heart disease with coronary artery disease, compensated, and reactive depression. In a written report dated February 13, 1973, Dr. Narasi indicated that plaintiff suffered from arteriosclerotic coronary artery disease—class IIB, cervical spondylosis with vertebrobasilar insufficiency, and reactive depression. He concluded that plaintiff was not able to work and was "physically and mentally incapacitated for any rehabilitation."

Dr. Aquilina, an internist, examined plaintiff at the state agency's request. In his report dated June 15, 1972, Dr. Aquilina stated that plaintiff's resting EKG revealed no diagnostic abnormalities, and he considered plaintiff's Master's Two-Step exercise test, not completed because of plaintiff's shortness of breath, to be negative. Dr. Aquilina made no conclusions concerning plaintiff's alleged other impairments, either singly or in combination.

Various other physicians submitted findings or statements which included an unsigned diagnosis of angina, an x-ray report from Dr. Katz, a diagnosis of urinary tract infection by Dr. Gonder, a diagnosis of degenerative disc disease, lumbar and cervical spine by Dr. Brothman, the 1966 and 1973 Kenmore Mercy Hospital reports and a report from the Florida Hospital and Sanitarium covering plaintiff's two 1970 hospitalizations at that institution.

Dr. Oliver Bateman, an internist, did not examine the plaintiff, but reviewed the medical evidence as medical adviser to the administrative law judge. Dr. Bateman disagreed with Dr. Chassin's diagnosis of coronary artery disease or coronary insufficiency. He likewise did not believe that Dr. Narasi's diagnosis of arteriosclerotic heart disease—class IIB, precluded sedentary work. Dr. Bateman concluded that the symptomatology and findings in the record indicated that plaintiff had no impairment or impairments which met or equaled the listed impairments set forth in the Appendix to Social Security Regulation No. 4, Subpart P. [hereinafter Appendix]. While Dr. Bateman conceded on cross-examination that Dr. Aquilina's medical report, upon which he heavily depended, might be outdated, he denied that it "might very well" be outdated.

In reaching his decision, the administrative law judge attempted to delineate and balance the conflicting medical evidence. Relying heavily on the findings of Dr. Aquilina and the opinion of Dr. Bateman, the administrative law judge found no impairment of the cardiovascular system sufficient to comply with the standards set forth in the Appendix. In disfavoring Drs. Chassin and Narasi's statements of disability, the administrative law judge noted that only Dr. Aquilina had performed a Master's Test, and that Dr. Bateman had testified that this test was a truer indication of the presence or absence of angina pectoris than the resting EKG's used by Drs. Chassin and Narasi.

In finding insufficient digestive impairments to meet the standards set forth in the Appendix, the administrative law judge relied solely on the opinion of Dr. Bateman. Dr. Bateman's opinion was based largely on the findings of Drs. Chassin and Narasi, both of whom opined that plaintiff was unable to work.

The administrative law judge similarly found insufficient mental impairments to meet the standards of the Appendix. His conclusion was based solely on the opinion of Dr. Bateman, which conflicted with Drs. Chassin and Narasi's findings of reactive depression. Plaintiff was not examined by a psychiatrist or psychologist.

In finding no musculoskeletal impairments sufficient to meet the standards of the Appendix, the administrative law judge relied heavily on Dr. Bateman's opinion, which was contrary to the conclusions of the two examining physicians. Similarly, no genitourinary impairments sufficient to meet the standards set forth in the Appendix were found. Finally, again relying on Dr. Bateman's opinion, the administrative law judge found that the combination of plaintiff's body system involvements were not the equivalent of any impairment listed in the Appendix.

■ In summary, aside from the cardiovascular finding where Dr. Bateman's conclusion was corroborated by an examining physician, Dr. Aquilina, the administrative law judge's findings relied heavily, if not exclusively, on the opinions of a non-examining physician. Since the Secretary's decision must be supported by substantial evidence, the question arises whether the uncorroborated opinions of a non-examining physician, based largely on the findings of two examining physicians who reached contrary conclusions, constitute substantial evidence.

In *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Supreme Court held that a written report by a physician who examined the claimant may be received as evidence, and, despite conflicting live evidence, may constitute substantial evidence when the claimant has not exercised his right to subpoena the reporting physician. *Id.* at 402, 91 S.Ct. 1420. In its decision, the Court noted the common use of non-examining medical advisers in complex cases for explanation of medical problems in terms understandable to the layman. The Court condoned the offering of an opinion by such an adviser, at least, as in *Perales,* where the adviser's opinion did not differ from the medical reports of examining physicians. However, in a vigorous dissent, Justice Douglas (Black, Brennan, concurring) stated: "The use of circuit-riding doctors who never see or examine claimants to defeat their claims should be beneath the dignity of a great nation." *Id.* at 413, 91 S.Ct. at 1433.

In *Martin v. Secretary of Dept. of Health, Ed. & Welfare,* 492 F.2d 905 (4th Cir. 1974), claimant's physician and a neutral physician supported her claim of disability while a non-examining Social Security physician, after reviewing the record, expressed the opinion that claimant could do some type of work. Reversing the Secretary's decision, the court held that the opinion of the non-examining physician was not substantial evidence where (a) claimant's subjective evidence, (b) expert medical opinions of examining physicians, (c) claimant's vocational history, and (d) objective medical facts were to the contrary. The *Martin* court pointed out that although *Perales* accepted the opinion of a non-examining adviser, his opinion did not differ from the medical reports. In *Kyle v. Cohen,* 449 F.2d 489 (4th Cir. 1971), a non-examining adviser's opinion of no disability was supported by the opinions of examining physicians. *Martin* distinguished *Kyle* by noting that a non-examining adviser's opinion could constitute substantial evidence where examining physicians supported the opinion of the non-examining adviser (as in *Perales*).

In *Landess v. Weinberger*, 490 F.2d 1187 (8th Cir. 1974), two non-examining medical advisers reviewed the medical reports and concluded that claimant's impairments did not meet or equal the level of severity prescribed in the Appendix. In holding that the Secretary's decision was not supported by substantial evidence, the court stated that an adviser's assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant. *Id.* at 1190. The court stated:

> To attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best.

*Id.* at 1190.

The court emphasized that the medical adviser in *Perales* was to be used primarily in complex cases for explanation of medical problems in terms understandable to the layman examiner. In reversing and remanding for further evidence, the court noted that the hearing officer has a duty to fairly and fully develop the matter at issue, especially where claimant appears without counsel.

In *Mefford v. Gardner*, 383 F.2d 748 (6th Cir. 1967), three examining physicians supported claimant's alleged disability while a fourth, hired by the Administration, examined claimant once and filed a medical report. On remand to the Secretary to determine what type of work claimant could do, the examiner reopened the whole case. In response to the hearing examiner's written questions, a non-examining physician, based on his review of the medical reports submitted before and after remand, opined that claimant did not have a cardiovascular impairment. The court stated that the non-examining physician's opinions

> . . . cannot be considered substantial evidence in view of the fact that he never saw or examined appellee, and in face of the medical evidence of physicians who not only

treated him over a long period of time but also examined him and came to the determination that he was totally and permanently disabled.

*Id.* at 759.

However, in *Sullivan v. Weinberger*, 493 F.2d 855 (5th Cir. 1974), a non-examining physician reviewed the evidence and found no impairment, contrary to the opinion of an examining specialist in psychiatry and neurology. The court stated that to constitute substantial evidence, a medical adviser need not have examined the claimant, nor must his opinion concur with other evidence. The court noted, however, that even without the report of the non-examining physician there was substantial evidence to support a decision adverse to the claimant.

In summary, under *Perales, Martin, Landess* and *Mefford,* the opinions of a non-examining medical adviser, when contrary to the conclusions of two examining physicians, do not constitute substantial evidence unless the adviser's opinions are supported by findings or opinions of an examining physician. Even in *Sullivan,* despite its language, the court noted that there was substantial evidence to support the Secretary's decision even without the report of the non-examining adviser.

A single question thus remains: were Dr. Bateman's opinions supported by the findings or conclusions of an examining physician? While Dr. Aquilina appears to have examined more than plaintiff's cardiovascular system, his only conclusion concerned that system and appears to be supportive of Dr. Bateman's opinion of that alleged impairment. Dr. Aquilina, however, offered no opinions concerning plaintiff's other alleged impairments, or combination of impairments. It therefore appears that, except for the cardiovascular system, Dr. Bateman's opinions were not supported by an examining physician. In fact, they were contradicted by two examining physicians who concluded that plaintiff was unable to work. The

administrative law judge, in reaching his decision, dismissed the other alleged impairments by citing Dr. Bateman's conclusions, *not* by examining and evaluating all the findings and opinions which were in the record. Therefore, the court finds that the Secretary's decision was not supported by substantial evidence.

Defendant's motion for summary judgment is denied and the case is remanded to the Secretary pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g), in order to take additional evidence on plaintiff's mental and physical condition consistent with the findings above. The court suggests that a complete physical examination, at administration expense, would obviate many of the problems raised in this difficult case.

So ordered.