Pedro ROSA, Plaintiff,

v.

SECRETARY OF HEALTH & HUMAN SERVICES, Defendant.

Civ. A. No. 81–2942–N.

United States District Court,
D. Massachusetts.

Sept. 21, 1982.

Richard K. Latimer, Kistin & Babitsky, Falmouth, Mass., for plaintiff.

Gregory Flynn, Asst. U. S. Atty., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

The cause of action in this case has been filed pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), against the Secretary of Health and Human Services. This is a review of a final decision issued by the Secretary. Section 405(g) of the Act provides, *inter alia:* "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a hearing." The provision mandates that "the findings of

the Secretary as to any fact, if supported by substantial evidence, shall be conclusive". The plaintiff, Mr. Pedro Rosa, has moved for summary judgment challenging a ruling of the Secretary that has granted disability payments for a closed period of time extending from June 30, 1978 to January, 1981. The Secretary of Health and Human Services has moved for an order affirming the decision below. Having exhausted his administrative remedies, the case is properly before the court and a decision must be based upon the certified record of the administrative proceedings.[1]

■■■ As a general proposition, in reviewing the action of the Secretary, the sole question is whether there is substantial evidence in the record to support the decision of the Secretary. This concept of substantial evidence has been defined as "more than a scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir. 1981); *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is not some evidence, or a great deal of evidence; rather, substantiality must take into account whether the record fairly detracts from its weight. *Beaven v. Secretary of H. E. W.,* 577 F.2d 383, 387 (1978). Substantial evidence is evidence of sufficient quantity and probative value or worth that a reasonable mind might accept it as compelling the conclusion reached by the administrative agency. *See Garret v. Richardson,* 363 F.Supp. 83, 87 (D.C.S.C. 1973); *Beasley v. Califano,* 608 F.2d 1162, 1166 (CA Ark.1979); *Hancock v. Secretary of H. E. W.,* 603 F.2d 739, 740 (8th Cir. 1979); *Alexander v. Weinberger,* 536 F.2d 779, 784 (8th Cir. 1976). However, in the instant case, we do not reach the question

of evidentiary substantiality. This case is remanded for the following reasons: The inappropriate application of Table No. 1 of the Medical-Vocational Guidelines; the failure of the ALJ to consider the side effects caused by drugs ingested by the plaintiff; and the failure of the ALJ to adequately explicate the bases which support his finding as reflected in his opinion.

I must preface my legal analysis by a review of the facts in this case. The plaintiff, Mr. Pedro Rosa, is a 33 year old male who has completed 11 years of education. His past work experiences involved jobs of the unskilled variety. The plaintiff has been out of work since June 30, 1978 because of a back injury which was caused by a fall on the job. Medical records reveal that the plaintiff was admitted to Bon Secours Hospital on July 17, 1978 where he was examined to discover the cause of his lower back pain. Ex. 18, R. 154. On the same day, the plaintiff underwent an intravenous pyelogram to examine his bladder and kidneys. The test results were normal. Ex. 18, R. 155. The plaintiff was then referred to Dr. Howard Taylor by Dr. Burke—the plaintiff's family physician. On August 5, 1978, the plaintiff was examined by Dr. Taylor at Lawrence General Hospital. He continued to suffer from acute back pain which radiated down his left leg. Ex. 17, R. 112.

Dr. P. Grillo of Lawrence General Hospital saw the plaintiff on August 9, 1978. The medical records indicate that at the time of this examination he continued to complain of lower back pain with radiation down the left leg. The pain was aggravated by coughing and sneezing. He also experienced paresthesiae or numbness near the left great toe. Further, the report of Dr. Grillo indicates the presence of muscle spasms, tenderness on the left side of the lumbar spine, and tenderness over the left sciatic notch. The lower back pain was

---

1. On January 9, 1980 (Ex. 6, R. 50), the plaintiff filed an application for disability insurance alleging that he had not been able to work from June 30, 1978 to the present. R. 50–53. The Plaintiff's application was denied by the Social Security Administration; and a reconsideration resulted in a rejection. R. 54–60. On March 10, 1981, an administrative law judge heard the plaintiff's case, and a decision was rendered against him. The plaintiff then sought legal redress from the Appeals Council which affirmed the decision of the ALJ.

unrelieved by bed rest. Dr. Grillo suggested a myelogram to determine if the plaintiff had a herniated lumbar disc. Ex. 17, R. 113. The myelogram was performed by Dr. Mark Belkin and no herniated disc was discovered. On November 6, 1978, the plaintiff was seen again by Dr. Grillo. Again, he complained of lower back pain which radiated down the left leg. Dr. Grillo noted muscle spasms, tenderness over the lumbar spine, numbness in the left thigh and the left great toe. Ex. 18, R. 120. Mr. Rosa was admitted to Bon Secours Hospital on November 7, 1978 for a second myelogram which was performed at the request of Dr. Grillo. Ex. 18, R. 121–123. The myelogram revealed a herniated disc. The disc was removed on November 13, 1978. *Id.* at Ex. 18, R. 121. During the postoperative period, the plaintiff no longer experienced pain. *Id.* However, during subsequent visits, the plaintiff complained of lower back and buttock pain. The plaintiff used a walking cane at this time. Ex. 19, R. 178–180.

On January 5, 1979, the plaintiff complained of extreme pain in his left hip. Dr. Grillo reports that he suffered from pain in the lumbar spine area, considerable spasms of the paralumbar muscles, and diminished pin sensation along the left anterior thigh. Ex. 19, R. 181. He referred Mr. Rosa to Dr. Patel for physiotherapy. On May 19, 1979, Dr. Grillo described the pain suffered by Mr. Rosa as "incapacitating." He observed numbness in the plaintiff's left thigh, and the plaintiff complained of "a feeling of coldness in the bone" of his left leg. Ex. 19, R. 184.

On July 20, 1979, Dr. Grillo prescribed Darvocet for the plaintiff's pain. Ex. 19, R. 187. Presently, the plaintiff takes the drug three or four times each day. Upon ingesting the drug, the plaintiff alleges that he feels drowsy and must go to sleep. The drug is said to stop the pain for two or three hours. The plaintiff must then take more of the pills. Tr. 11, R. 29. At the hearing, Mr. Rosa complained of cramps which occur suddenly in his legs. Tr. 13, R. 31. The medication (Darvocet) relieves the pain but not the cramps. In addition to drowsiness, the plaintiff testified that the medicine (Darvocet) causes stomach problems. Tr. 17, R. 35. The drowsiness and stomach cramps are side effects caused by ingesting the drug. Further, the plaintiff testified that sitting causes pain which, in turn, forces him to take Darvocet. Tr. 19, R. 37.

On August 24, 1979, Dr. Grillo concluded that the plaintiff was totally disabled. Ex. 19, R. 189. Dr. Grillo's report of November 30, 1979 indicates a worsening of the plaintiff's condition. The plaintiff had pain below the left nipple; he had back pain which radiated up to the top of the thoracic spine at the base of the neck; he continued to suffer from diminished sensation in the left thigh. Ex. 19, R. 190. As of April 4, 1980, Dr. Grillo noted that the plaintiff's condition had not improved. Under a section of his medical report labeled "Impression", he wrote:

"I believe that Mr. Rosa has reached an end result and that he will not change significantly in the future. He continues to have lower back pain which radiates into the left leg. Because of his symptoms. I consider him disabled."

Dr. Chandrakant Patel examined the plaintiff and noted decreased sensation in the left thigh; he noted muscle spasms, and a limp. Again, plaintiff registered a complaint of lower back pain radiating down his left leg. Dr. Chandrakant Patel's report reveals that the plaintiff had been taking medicine which upset his stomach. Ex. 20, R. 192. The transcript of the administrative hearing indicates that the plaintiff continues to walk with the use of a cane. Tr. 13, R. 31. At the hearing, the plaintiff testified that he could walk no greater distance than one block, sit only 20 minutes at one time, and stand for 10 to 15 minutes. Tr. 7, R. 25. He claims that he is unable to lift his two year old daughter or any of his other children. Tr. 16, R. 34. On January 21, 1981, Dr. Grillo wrote:

To Whom It May Concern:

Mr. Pedro Rosa has been a patient under my care for herniated lumbar discs since July 1978. His condition is a chronic one,

and I feel that there will be little change in the future. Pedro Rosa is disabled from work.

The ALJ submitted the reports of three physicians as evidence of the plaintiff's physical condition: Dr. Donald Greene, Dr. A. Lurie, and Dr. Eric Sharton. Dr. Greene's report of February 26, 1980 indicates that the plaintiff retained a mild weakness in his right hip. His gait was no longer impaired even though he walked with a cane. However, his trunk motions appeared to be restricted. Ex. 23, R. 196.

Dr. Greene suggested that the plaintiff had the residual functional capacity to walk or stand for 3–4 hours a day, to sit 5 hours each day, and to lift 25 pounds frequently, 50 pounds occasionally. The plaintiff also possessed a limited ability to stoop, kneel, crouch or crawl. Ex. 23, R. 200. Dr. A. Lurie, a non-examining physician, concluded that the plaintiff's ability to walk, stand, sit, use his upper extremities, and use his lower extremities were unrestricted. The plaintiff's only restriction was his inability to lift more than 20 pounds. Ex. 24, R. 201. Dr. Eric Sharton, another non-examining physician, reported findings identical to those of Dr. Lurie's. However, Dr. Sharton found that the plaintiff had a limited use of his lower extremities. Both doctors opined that these were significant restrictions of work-related functions. Ex. 24, *supra* at R. 201; Ex. 26, *Id.* at R. 204. Thus, the facts and evidence presented before the ALJ have been summarized.

The ALJ found that Mr. Pedro Rosa was disabled from June 30, 1978 to January 6, 1981. The ALJ concluded that by the time of the hearing (January 6, 1981) the plaintiff's condition had improved. Consequently, the ALJ found the plaintiff disabled for a closed period. However, the ALJ's conclusions are in several important areas unsupported by the evidence, and some of the bases for these decisions are left unexplained.

■ A few examples will be illustrative of the preceding. The evidence in the record seems to indicate that the plaintiff's condition worsened. Ex. 19, R. 189–191.

Under cross-examination, Dr. Grillo stated that any work done by the plaintiff would be limited by pain. Ex. 28, R. 254. Dr. Gardner found the plaintiff "significantly incapacitated by his condition." Ex. 22, R. 195. Dr. Howard P. Taylor stated (at his October 1980 deposition): "[P]rolonged sitting would probably be very painful for him." Ex. 27, R. 220. Even Dr. Greene, the agency's medical advisor, stated that the claimant was not capable of sitting for more than 5 hours or standing for more than 4 hours out of an 8 hour work day Dr. Greene found that repeated bending and kneeling (etc.) would be problematic for the plaintiff. Ex. 23, R. 200. Too, Dr. Greene noted muscle weakness in the right hip and diminished sensation in the left thigh. Ex. 23, R. 198. The claimant's gait had improved. The two non-examining physicians reported that the plaintiff had an unrestricted ability to stand, walk, and sit. Dr. Sharton declared that the plaintiff had a limited use of his lower extremities. Nevertheless, both non-examining physicians found that there was a "significant restriction of work-related functions." These opinions, which to a critical extent, differ from those of the examining physician must be discounted when contradicted by the examining physician's views. These opinions would not constitute substantial evidence (if we were addressing the question) and should never be given significant weight. *Ehrenreich v. Weinberger,* 397 F.Supp. 693 (W.D.N.Y.1975); *Marbury v. Matthews,* 433 F.Supp. 1081 (W.D.N.Y. 1977); *Browne v. Richardson,* 468 F.2d 1003, 1006 (CA1, 1972); *Rodriguez v. Secretary of H. E. W.,* 647 F.2d 218, 223 (CA1, 1972).

■ The ALJ's opinion, in a conclusory fashion, states: It appears that the claimant remained disabled through 1980, but at the time of the hearing on January 6, 1981, his condition had improved to where he could perform a number of sedentary occupations ....." However, he does not establish on the record what evidence would tend to support this conclusion. The language "it appears" is language of uncer-

tainty; it is insufficient to satisfy the standard of proof.

■ The ALJ concludes that the plaintiff no longer suffers from pain. However, the ALJ fails to point to one specific item of evidence in the record supportive of this conclusion. None of the medical advisors who submitted reports for the agency commented upon the claim of reoccuring pain. One would expect these medical witnesses to have opinions as to the occurrence of pain where a patient has suffered from serious back problems. The record is silent on this matter. The ALJ must support all findings with specific reasons or evidence from the record. Upon remand, the ALJ should complete an exhaustive inquiry into the extent to which the presence of pain affects the plaintiff's ability to engage in substantially gainful work activity.

■ The ALJ concluded that the plaintiff retained the residual functional capacity to engage in a number of occupations recognized by the Secretary of Health and Human Services. Considering the plaintiff's age (33 years old—younger person), education (11 years of high school—limited education), and work background (unskilled), the ALJ ruled that Table No. 1 of Appendix 2 to Regulation No. 4 was applicable. In fact, the ALJ stated: "Rule 201.24 of Table No. 1 is appropriate and *mandates* [emphasis added] that the claimant be found not disabled ...." The ALJ has erred in his application of the rules. It is axiomatic that where there are non-exertional factors or impairments which limit the range of activity a claimant might perform at a given exertional level, the rules of the Medical-Vocational Guidelines are not conclusive as to disability. In *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981) the court ruled:

"Where non-exertional limitations (mental, or sensory, or skin impairments)—the other portion of residual functional capacity—are present alone or in combination with strength limitations, the factors can not coincide precisely with the rule. In addition the rules are not conclusive where a combination of impairments limit the range of work that an individual can perform at a given exertional level. *Id.* at 265.

■ In the case of *Torres v. Secretary of HHS*, 668 F.2d 67 at 69 (1st Cir., 1981), the court counseled ALJs to stay completely away from the "Guidelines" if there are non-exertional factors so significant that the claimant does not possess the residual functional capacity upon which they are predicated. This course of action would make review simpler and avoid unnecessary reversal. The court further stated:

"In a decision by an ALJ leaning on the 'guidelines' [where there are non-exertional impairments] in some measure for its ultimate decision, it would be difficult, if not impossible, to be certain that the 'Guidelines' had not unduly influenced the overall decision by tainting an area in which they should not have been considered at all." *Id.* at 69.

Consequently, it was error for the ALJ to apply Rule 1 of Appendix 2 in the instant case. A more individualized treatment is required where there are non-exertional factors or impairments. The rules can not direct a conclusion of disability. *See* Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P., Appendix 2 200.00(d)–(e) (1981); *See also Sherwin v. Secretary of HHS*, 685 F.2d 1 (1st Cir. 1982). There were non-exertional factors in this case: pain and the side effects of medication. The presence of these non-exertional factors militate against the ALJ's conclusion that Table No. 1 was *appropriate* and *mandated* a finding against disability.

■ The ALJ again erred in his failure to consider the non-exertional factor of side effects. The presence of side effects from medication was raised during the hearing. The plaintiff alleged (uncontradicted) that Darvocet caused drowsiness and stomach problems. The drowsiness made it necessary for the plaintiff to sleep. The record reveals that the plaintiff took Darvocet 3–4 times daily. There was no inquiry or investigation into whether the side effects caused by ingestion of Darvocet made the claimant disabled. The ALJ should have probed this question. At a minimum, he

should have made a finding concerning the side effects of taking the drug as opposed to ignoring it. *Figueroa v. Secretary of H. E. W.,* 585 F.2d 551–554 (1st Cir. 1978); *see also Thompson v. Califano,* 556 F.2d 616, 618 (1st Cir. 1977); *Miranda v. Secretary of H. E. W.,* 514 F.2d 996 (1st Cir. 1975).

In *Figueroa* the court remanded the cause of action because the ALJ failed to consider or make inquiry into the question of side effects caused by a drug used by plaintiff to control epileptic seizures. The plaintiff contended that the medicine made him sleepy, hot, ill-tempered and caused him to be disabled. The court observed that the Secretary's own regulations recognized that medication itself might create problems in some instances if unusually large dosages are necessary, or if its side effects are disabling. The case was reversed and remanded so that the Secretary could take additional evidence on the side effects caused by the medication. The Secretary was instructed to determine if these side effects caused the plaintiff to be disabled within the meaning of the Act. *Id.* 585 F.2d at 554. Thus, this court orders that, upon remand, the Secretary must take additional evidence on the side effects of medication used by Mr. Pedro Rosa. The Secretary is to determine whether these side effects cause the plaintiff to be disabled within the meaning of the Act.

Finally, I must summarily dispose of the plaintiff's allegation concerning the validity of the Medical-Vocational Guidelines. Plaintiff's contention that these guidelines are invalid is without merit. The use and validity of these tables or grids have been upheld in a host of cases. *Cummins v. Schweiker,* 670 F.2d 81, 83 (7th Cir. 1982); *Kirk v. Secretary of HHW,* 667 F.2d 524 (6th Cir. 1981); *Salinas v. Schweiker,* 662 F.2d 345 (5th Cir. 1981); *Frady v. Harris,* 646 F.2d 143, 144 (4th Cir. 1981); *Geoffroy v. Secretary of HHS,* 663 F.2d 315 (1st Cir. 1981); *Simonsen v. Secretary of HHS,* 512 F.Supp. 1064 (S.D.Cal.1981); *Sweet Burton v. Schweiker,* 512 F.Supp. 913 (W.D. Pa.1981); *Sloan v. Secretary of HHS,* 512 F.Supp. 1296 (N.D.W.Va.1981); *Boyce v.*

*Harris,* 492 F.Supp. 751 (D.S.C.1980). In his brief, the plaintiff has parroted all the arguments against these regulations which are found in *Sherwin v. Secretary of HHS,* 685 F.2d 1 (1st Cir. 1982). All of these arguments, adopted by the plaintiff verbatim, were rejected in that same case with great discussion by the court. No further expatiation on these arguments would be fruitful.

For the foregoing reasons set forth in this opinion, the dictates of right reason and justice move the court to remand the case for "good cause." Accordingly, the case is remanded for further proceedings consistent with this opinion.