**Helen AGRESTI, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. A. No. 84–0966–Y.

United States District Court, D. Massachusetts.

March 31, 1986.

Mark Bronstein, Kehoe, Doyle, Playter & Novick, Boston, Mass., for plaintiff.

Asst. U.S. Atty. Karen Falkenstein Green, for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff Helen Agresti brought this action to obtain judicial review of a final decision of the Secretary of Health and Human Services (the "Secretary") denying her application for Social Security disability benefits. The Secretary found that indicia of continuous severe pain, such as muscle atrophy and gross loss of muscle tone, were not present; that her daily activities were not as markedly restricted as might be expected in cases involving continuous severe, intractable pain; and that the medical record failed to demonstrate any impairment, mental or physical, which would alter these conclusions with respect to disability.

Agresti argues that when the Administrative Law Judge adopted the opinion of a non-examining medical advisor he did so without adequate analysis and without any attempt to reconcile that opinion with the contradictory medical evidence in the record. As a result, Agresti contends that the decision of the Secretary lacks support by substantial evidence and contains serious errors of law. These factors, Agresti argues, dictate a reversal or a remand.

At oral argument the Secretary took the position that the Court should affirm or reverse, but should not remand. Faced with this choice, the Court reverses the decision of the Secretary, primarily due to the wholly inadequate review afforded by the Administrative Law Judge.

### I.

Agresti is a 54 year old woman with a tenth grade education. Her past relevant work includes employment as a switchboard operator and as a secretary. Agresti had lumbar disc surgery in 1947. Since that time her medical history shows chronic degenerative disc disease, bursitis of both shoulders, carpal tunnel syndrome with ul-

nar nerve release procedures done on both arms and severe depression requiring hospitalization in 1978. (Tr. 89–121, 154)

In December, 1980 Agresti was hit in the head by a heavy swinging door at work and injured her back and neck. Her physical and mental condition deteriorated during the next few months, and in May of 1981 she ceased work, complaining of increasing pain and discomfort as well as depression. (Tr. 5)

## II.

A district court reviewing a decision of the Secretary must determine whether the decision is supported by substantial evidence and conforms to statutory requirements. *Geoffroy v. Secretary of HHS*, 663 F.2d 315, 319 (1st Cir.1981). The relevant statute defines a disabled individual as one who is unable:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

42 U.S.C. § 423(d)(1)(A) (1982). Section 423(d)(2)(A) further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

*Id.* § 423(d)(2)(A).

The Secretary has promulgated regulations that employ a series of tests to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 (1985). *See Goodermote v. Secretary of HHS*, 690 F.2d 5, 6 (1st Cir.1982). In particular, the Social Security Administration asks five questions in the following order:

First, is the claimant currently employed? If so, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment which "significantly limits his or her physical or mental capacity to perform basic work-related functions." 20 C.F.R. § 404.1521 (1985). If the claimant does not have a severe impairment, the claimant is automatically considered not disabled.[1]

Third, does the claimant have an impairment equivalent to one specifically listed in the regulations' Appendix 1? If so, the claimant is automatically considered disabled.

These first three tests are threshold "medical" tests. If the claimant is found to have a severe impairment (test 2) but

---

**1.** The present status of the step two regulations is unclear. In *McDonald v. Heckler*, 624 F.Supp. 375 (D.Mass.1985), another judge of this court, after certifying a broad class of individuals who had been, or who may be in the future, denied Social Security disability benefits at step two, held those regulations invalid as inconsistent with the governing statute. *Id.* at 380; *see* 20 C.F.R. § 404.1520(c) and § 416.920(c). This result had already been reached in three other circuits. *See, e.g., Johnson v. Heckler*, 769 F.2d 1202 (7th Cir.1985); *Yuckert v. Heckler*, 774 F.2d 1365 (9th Cir.1985); *Baeder v. Heckler*, 768 F.2d 547 (3rd Cir.1985). Agreeing with this analysis, this Court promptly remanded three cases to the Secretary for redetermination, both because the petitioners were members of the *McDonald* class and because this Court is in full accord with the substantive holding of *McDonald*. *Delgrado v. Bowen*, No. 85–3648–Y,

slip op. (D.Mass. March 3, 1986); *Irons v. Heckler*, No. 84–2873–Y, slip op. (D.Mass. March 3, 1986); *Blais v. Bowen*, 629 F.Supp. 543 (D.Mass. 1986). Thereafter, in *Gallo v. Secretary of Health and Human Services*, 786 F.2d 1 (1st Cir.1986), the First Circuit Court of Appeals remanded to the District Court a similar challenge to the step two regulations, declining to reach the merits of the challenge in the absence of a full record demonstrating that the appellant had standing, i.e., in light of the analysis mandated at steps three through five, she would have been granted social security disability benefits were it not for the application of the step two regulations. *Id.* at 7–8. At the moment of the issuance of this opinion, therefore, the broad class of petitioners certified in *McDonald* would appear to include the plaintiff in *Gallo*, yet the directives to the Social Security Administration are inconsistent.

**1248**

that impairment is not equivalent to one listed in Appendix 1 (test 3), the agency goes on to the fourth and fifth questions, which apply "vocational" tests.

Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled. *Goodermote v. Secretary of HHS*, 690 F.2d at 6–7.

In applying these last two "vocational" tests, the claimant has the burden of proving that he is disabled under the fourth test; that is, he must prove that his disability is serious enough to prevent him from working at his former jobs. However, the Secretary bears the burden of showing that the claimant has not satisfied the fifth test; that is, the Secretary must show the existence of other jobs in the national economy that the claimant can perform. *Id.* at 7.

Judicial review of Social Security disability determinations is limited, and the Court must affirm the Secretary's decision if it is supported by substantial evidence. The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the Secretary. Therefore, this Court must uphold the Secretary's findings in this case if a reasonable mind, reviewing the entire record as a whole, could accept it as adequate to support the Secretary's conclusions. *Rodriguez v. Secretary of HHS*, 647 F.2d 218, 222 (1st Cir.1981).

### III.

This matter has an unusual procedural history. On March 2, 1982, Agresti filed an application for Social Security Disability Insurance benefits claiming that she had been disabled since May, 1981. Her claim was denied initially and on reconsideration. After a timely request, a hearing *de novo* was held in Boston, Massachusetts before Administrative Law Judge Thomas E. Bennett who was assigned temporarily to Boston from Oklahoma City. From time to time the Secretary will assign Administrative Law Judges to Boston to hear cases for a few weeks when necessary to reduce the local docket.

After the hearing, Administrative Law Judge Bennett returned to Oklahoma City. There he submitted the case to a non-examining Medical Advisor, local psychiatrist Dr. Robert A. Schneider. (Tr. 254) In response, Dr. Schneider proffered a one page hand-written report which was subsequently made part of the record. (Tr. 256) On August 22, 1983, the Administrative Law Judge issued a four and one-quarter page decision denying Agresti's claim for disability benefits. In this decision, Administrative Law Judge Bennett accepts and adopts Dr. Schneider's report without analysis and with only the merest nod to the substantial mass of contrary evidence in the record.

This is not the first time that Administrative Law Judge Bennett has been assigned to Boston and, upon returning to Oklahoma, sought and relied upon a post-hearing review by a non-examining Medical Advisor. This is not the first time Administrative Law Judge Bennett has ignored the record to find such post-hearing evidence— in and of itself—sufficient to support a finding of "not-disabled." This is not the first time that Administrative Law Judge Bennett has relied on Dr. Schneider to provide the evidence. This ought be the *last* time, however.

#### (a) The Pattern and Practice

Agresti documents this pattern of behavior with two unpublished decisions by Judge Keeton, *Dones v. Heckler*, No. 83–3799, slip op. (D.Mass. July 10, 1985) and *Tumminelli v. Heckler*, No. 83–2714, slip op. (D.Mass. July 10, 1985). Both cases were heard by Administrative Law Judge Thomas Bennett sitting by assignment in Boston. In each instance the case files were submitted to non-examining Medical Advisors in Oklahoma. In neither case did Administrative Law Judge Bennett find the

claimant disabled. The *Dones* case file contains a handwritten letter from Dr. Robert Schneider dated January 31, 1983 which concludes "I do not feel that the two impairments considered (illegible) or combination equal the severity of a Listing." (Agresti, Exh. E.; *Dones* Tr. at 157).

In the *Dones* decision Administrative Law Judge Bennett writes:

Subsequent to the taking of testimony, the Administrative Law Judge sent ... the then Exhibits in this case to a Psychiatrist Medical Advisor [Dr. Robert Schneider] for evaluation of the medical evidence therein.... In his response (Ex. 25) that Medical Advisor fairly and accurately reflected the medical information in those Exhibits, properly considered in light of those Social Security criteria. Therefore, *the Administrative Law Judge adopts the evaluation and conclusions* set out in Exhibit 25, *with the same effect as if the Administrative Law Judge, himself had made that evaluation and had formulated those conclusions.* [Emphasis added.] (Agresti, Exh. C; *Dones* Tr. at 14)

In the instant case, Administrative Law Judge Bennett writes:

From a review of the medical record, it would appear that Dr. Schneider's comments and conclusions are amply supported by objective medical data in the hearing record. His conclusions are, therefore, *adopted by the undersigned Administrative Law Judge, it being deemed unnecessary, in the light of Dr.*

*Schneider's comments set out above, to summarize in detail the remainder of the medical record....*

(Tr. 16) [Emphasis added] The similarities in language and procedure are striking. The similarity of error requires comment.[2]

■ In fact, Dr. Schneider's comments and conclusions are *not* amply supported by objective medical data in the hearing record. Rather, the record fails to provide any substantial support for Dr. Schneider's opinions and, upon occasion, flatly contradicts his conclusions. Further, it is unreasonable to rely arbitrarily on portions of a medical record while simultaneously ignoring the spirit of the record as a whole. *See e.g., Anderson v. Secretary of HHS*, 634 F.Supp. 967, 972 (D.Mass.1984) (improper to rely on only part of a single document).

■ Second, Administrative Law Judge Bennett acted improperly in "adopting" the conclusions of a non-examining physician without evaluation because, as matter of law, he has an obligation both to claimants and to reviewing courts to make full and detailed findings and to articulate reasons in support of his ultimate conclusion. *See e.g., Small v. Califano*, 565 F.2d 797, 801 (1st Cir.1977) Although he is entitled to evaluate the medical and other evidence and make an independent judgment regarding a claimant's capabilities, *Trembly v. Secretary of HHS*, 676 F.2d 11, 13 (1st Cir.1982), it is an abuse of discretion to ignore Agresti's whole record to rely instead on a familiar and proven non-examin-

2. In both the *Dones* and *Tumminelli* cases Judge Keeton stated:

The plaintiff argues that the Secretary's decision is not supported by substantial evidence and is based upon several erroneous conclusions of law. I agree.

The ALJ's decision, with little more than two pages of analysis, is so inadequate that I am unable to properly review his factual findings and legal conclusions. First, I note that it appears that the ALJ simply adopted, without independent analysis, the conclusions of the Secretary's Advisor.... I conclude that the ALJ's delegation of his responsibility to make "full and fair findings" to the Secretary's Medical Advisor was improper. [Citation omitted.]

In this case, the individual making those findings and conclusions had not examined the plaintiff and was not in the same position as the ALJ to evaluate the evidence. The ALJ could have accepted the findings of the Medical Advisor, but only after explaining his basis for doing so in his decision and reconciling the contrary evidence. I note that this is not a case in which the ALJ simply accorded more weight to the Medical Advisor's findings. *See Tremblay v. Secretary of HHS*, 676 F.2d 11, 13 (1st Cir.1982). The ALJ completely adopted the Medical Advisor's findings without analysis.

*Tumminelli v. Heckler*, slip op. at 5–6; *Dones v. Heckler*, slip op. at 6.

er. Although the opinions and diagnosis of a treating physician are not necessarily entitled to more weight than those of other medical consultants, *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982), such opinions should be considered carefully in the absence of grounds to question their reliability. *See Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir.1981).

■ Third, Administrative Law Judge Bennett committed clear error of law when he "deemed it unnecessary ... to summarize in detail the remainder of the medical record." Not only is it necessary to summarize Agresti's medical record, it is *mandated* by law. *Small v. Califano*, 565 F.2d at 801.

Fourth, Administrative Law Judge Bennett here creates the impression with his reference to summarizing the "remainder of the medical record" that he somewhere summarized *some* of it. He did not. In what passes for a summary of Agresti's medical record on page four of the decision, the Administrative Law Judge fails to mention a single medical report or to name a solitary treating and examining physician.[3] Except for reference to Agresti's symptoms under the heading "Testimony," itself only eleven lines long, the following is the sum total of the summarized medical findings:

> The claimant's complaints of severe, intractable, long-continued pain have been carefully evaluated by the undersigned Administrative Law Judge. It is noted that indicia of continuous, severe pain, such as muscle atrophy and gross losses of muscle tone, are not present. Neither does it appear from the descriptions of the claimant's daily activities contained

in the hearing record that such activities are as markedly restricted as might be expected in case involving continuous, severe, intractable pain. On the basis of the hearing record as a whole, the Administrative Law Judge concludes that the claimant's pain is not of such intensity, frequency and duration as to preclude the performance of substantial gainful activity at levels of exertion of which the claimant is elsewhere herein indicated to be capable.

(Tr. 17).

■ In discharge of his duties, the Administrative Law Judge is to weigh the evidence, resolve the material conflicts in the testimony, and determine the case accordingly. *See Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1979). In contrast, this analysis is wholly conclusory. Nowhere in his very truncated decision of four and one-quarter pages does Administrative Law Judge Bennett cite to the record, name a treating physician, or refer to specific facts. He fails utterly to evaluate or even to acknowledge a single one of the many medical reports from examining and treating physicians which state that Agresti has severe psychological problems and chronic pain impairments which limit her ability to function on a daily basis. *See* Agresti's testimony as to limitations on her daily activities at Tr. 31–34.

When he writes "on the basis of the hearing record as a whole," Administrative Law Judge Bennett gives no indication that this statement is not rote at best and pure invention at worst. Insofar as Administrative Law Judge Bennett has abdicated his responsibilities, his practices are arbitrary

---

**3.** Treating and examining physicians whose reports occur in Agresti's record include without limitation: Drs. Hammerman (Tr. 135–136), Thrasher (Tr. 228–229), Prince (Tr. 138), Varrin (Tr. 152), Kern (Tr. 154–156), Segarra (Tr. 159), Harris (Tr. 163, 192), Levitsky (Tr. 165), Sidley (Tr. 181), Green (Tr. 186), Sugarman (Tr. 198), Yudowitz (Tr. 200) and psychiatric social worker Sciretta (Tr. 257).

Not one of these thirteen is named in the decision. Only Dr. Schneider appears by name. These reports overwhelmingly, though not with-

out exception, support a finding of disability. The evidence is "more than a mere scintilla." *See Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971). It is, in fact, "substantial evidence of sufficient quantity and probative value or worth that a reasonable mind might accept it as compelling...." *Rosa v. Secretary of HHS*, 547 F.Supp. 712, 714 (D.Mass.1982). Even where this not so, there is no excuse for summarily ignoring proferred medical evidence of such scope and breadth.

and capricious, and his actions constitute an abuse of discretion. When "evaluation" is conspicuous by its absence, this Court must remark on the charade. While the job of an Administrative Law Judge presents hard choices, he may not decide by default:

> The ALJ cannot reject evidence for no reason, or for the wrong reason, and must explain the basis for his findings. *Cotter v. Harris,* 642 F.2d 700, 706–707 (3rd Cir.1981) Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation.

*Crosby v. Heckler,* No. 83–2101, slip op. at 5 (D.Mass. April 12, 1985) (Zobel, J.); *see Small v. Califano,* 565 F.2d 797, 801 (1st Cir.1977). Although remand seems appropriate, the Secretary has asked the Court to choose between affirming or reversing. Accordingly, given this choice, the Court unhesitatingly reverses the decision of the Secretary. This is not to say, however, that the Court could not reverse on other grounds. In fact, the substantial weight of the evidence dictates a reversal in any case.

### (b) Medical Evidence

Substantial evidence in the record supports a conclusion that Agresti is disabled. Dr. Schneider's evaluation appears at page 256 of the transcript. It constitutes one page of a 257 page transcript of which the Court estimates no more than 90 pages represent official documents and appeal papers. Without evaluation, Administrative Law Judge Bennett credited Dr. Schneider's one page un-examined evaluation as against approximately 167 pages of analysis by treating and examining physicians.

In its most relevant part, Dr. Schneider's report identified a chronic musculoskeletal disorder but found that Agresti failed to meet the severity of Listing 1.05, Disorders of the Spine, "since there is no evidence of a significant fixation (loss of motion) and no loss of motor or sensory functions in the extremities or loss of reflexes." (Tr. 16)

Dr. Schneider also finds "An emotional disorder said to be secondary to family problems. This may well be her primary impairment...." (Tr. 16) Further, he finds "no evidence of psychosis" although he notes "depression, anxiety, hypochondiasis, hysteria and drug dependency" which he finds insufficient to meet Listing 12.04, Functional Non-psychotic Disorder. Dr. Schneider does not regard these symptoms as severe because Agresti's daily activities "do not suggest significant restrictions of interests and activities." (Tr. 16) *But see* Agresti's account of her limitations at Tr. 31–34.

Administrative Law Judge Bennett utilizes Step Four to find that Agresti's impairments do not prevent her from performing her past work (Tr. 17), although he recognizes the following impairments: (1) a chronic musculoskeletal disorder; (2) depression, mild; and (3) hypertension, controlled, without organ damage. (Tr. 17) The evidence in Agresti's record leads to a different conclusion.

Agresti was injured by the swinging door at work in December of 1980. In March, 1981 she saw Dr. Sylvia Hammerman, a licensed psychologist, for acute depression. Dr. Hammerman reports that this therapy ceased when neck and back pain ruled out Agresti's travelling. (Tr. 135–136) In May, 1981 Agresti ceased working because of pain and depression. (Tr. 30) In September, 1981 Agresti saw Dr. Eliot Thrasher at Mt. Auburn Hospital who concluded, despite a normal electromyelogram, that Agresti demonstrated chronic L5–S2 degenerative disc disease, cervical strain and status post ulnar nerve transfer of the left elbow. (Tr. 228–229) In November of the same year, Agresti again saw Dr. Hammerman who found that she was experiencing increasing isolation, loss of self-esteem, and "concern[ed] about her continuing physical pain and the fact that there had been no success in finding a working diagnosis or treatment." (Tr. 135) Dr. Hammerman diagnosed a "major depressive episode," noting that Agresti's "continuing physical pain and inability to

find effective treatment are the primary precipitants of her current depression, and that her current physical condition makes it impossible for her to work." (Tr. 136) On Dr. Hammerman's suggestion, Agresti was admitted to Charles River Hospital from December 10, 1981 until January 4, 1982.

There, Dr. Gary Prince, her treating physician, noted:

> The patient was severely depressed on admission, had a profoundly dysphoric mood and vegetative symptoms. The patient presented with multiple somatic complaints, particularly severe neck and back pain for a year after being hit in the head by a heavy door at work, and thrown against the wall. The pain intensified last spring and in March, 1981 after a fight with her husband she took an overdose of Valium ... she became increasingly depressed over the summer and fall of 1981.... Now she presents as severely depressed, unable to work for several months, unable to care for herself or keep house.

(Tr. 138)

While hospitalized, Agresti was also evaluated by Dr. Pamela Varrin who reported, among other things, that Agresti's "level of somatic complaints is consistent with a person who is experiencing valid psychological problems" but that she believed that Agresti's major psychological problem was not depression but rather that she was "highly manic." (Tr. 152) Dr. Varrin suggested two diagnoses: 1) Agresti was experiencing a bipolar disorder and was on the upswing from depressed to manic, and 2) Agresti has a thought disorder with a high level of energy expended in agitation. (Tr. 152) Further Dr. Varrin noted that Agresti was "experiencing marked impairment in functioning due to psychopathology." A severe level of somatization was noted, resulting in a high level of distress and virtual incapacitation by psychosomatic illness. (Tr. 152) Although Dr. Varrin noted Agresti's depression abated during hospitalization, she recommended treatment in an inpatient pain unit in a rehabilitation hospital. (Tr. 139)

On February 9, 1982 Dr. David Kern evaluated Agresti and found limitation of motion in her neck, shoulder, legs and arm. He observed that Agresti held her left arm with a closed fist, supported it with her right arm, could not raise or straighten her left leg because of pain, and that her "ankle reflexes were asymmetrical with absence on the left." (Tr. 154–155) Dr. Kern concluded: "I believe urgent intervention is required for this patient ... her extreme despair mak[es] examination difficult.... I feel that the only hope for this patient's recovery lies with her being hospitalized in a multimodality chronic pain facility. (Tr. 156)

In March of 1982, Dr. Joseph Segarra reported that Agresti "has had a long sustained period of unremittent pain focused mostly around the neck and the left arm. She also has pain in the left elbow especially upon mobilization to the extreme that she is now unable to extend her elbow fully without excrutiating pain. She can hardly hold her left upper extremity which she holds in a semi-flexed position with the fist half-closed unable to touch anything because of the build-up of painful sensation." (Tr. 159) Dr. Segarra re-commended admitting Agresti to a specialized pain unit for the management of chronic pain.

Dr. Gerald Harris, in a report also dated March 20, 1982, writes that Agresti is "multiply handicapped at this point and time by virtue of her emotional status.... Second, she is handicapped by virtue of the severe chronic pain syndrome [in] her back and neck.... It is the feeling of all who have recently seen her that she needs hospitalization in a rehabilitation setting for evaluation and treatment of her chronic pain. Until she is able to manage her chronic pain syndrome or until a diagnosis is made that can lead to an alleviation of the syndrome she will be totally and permanently disabled." (Tr. 163)

On March 26, 1982, at the request of the Social Security Administration, Dr. Walter Levitsky performed a consultative psychiatric examination on Agresti. Dr. Levitsky

diagnosed a mild arthritic condition severely exacerbated by a psychiatric impairment:

[In] terms of functional ability, the patient is certainly unable to drive a car or perform any work. On the basis of her psychiatric diagnosis of her conversion reaction, the patient is totally disabled. I agree with other examiner that its (sic) worthwhile trying her out in a multidisciplinary rehabilitation set up.

(Tr. 165) A further psychological consultative examination was performed by Dr. Nathan Sidley on August 13, 1982. His impression was "somatic problems post traumatic." While unsure whether Agresti had an "active psychiatric diagnosis" and upon belief that Agresti's problem was mainly medical, Dr. Sidley saw her prognosis as "uncertain, but generally not good. Her symptoms had lasted a long time despite competent therapy. Particularly absent a good diagnosis the outlook is pessimistic." (Tr. 181)

On August 30, 1982 in an orthopedic consultation, Dr. Donald Green diagnosed degenerative disc disease of the cervical and lumbosacral spine, noted x-ray evidence of degenerative spurring at the C5–6 and C6–7 levels, and observed degenerative disc disease at L4–5 and L5–1 with disc narrowing and spurring. Dr. Green expressed a belief that Agresti could do some moderate walking and lifting. On July 23, 1982 Dr. Harris updated his evaluation and concluded that Agresti continued to be completely incapacitated. (Tr. 192)

On March 1, 1982 Agresti was admitted to Choate Memorial Hospital after taking an overdose of drugs and alcohol. She was discharged two days later after agreeing to psychiatric follow-up. (Tr. 194–195) On December 3, 1982 Dr. Barry Sugarman evaluated Agresti and concluded:

[I]t was apparent that the *patient was in extreme distress, of a rather pervasive and global nature, to an extreme not frequently encountered by the undersigned in a pain clinic. . . .* The patient presents an obviously complex clinical picture with the *patient in exquisite distress* of an indeterminate etiology. At this time *because of the severity of the distress,* it is recommended that the patient pursue her treatment either on an inpatient basis, in a pain management unit, or in an inpatient service of a psychiatric hospital. [Emphasis added.]

(Tr. 198) Based on this recommendation, Agresti was admitted to the New England Rehabilitation Hospital as an inpatient from August 26, 1982 to October 21, 1982. According to Dr. Bernard Yudowitz, Agresti's depression improved during this hospitalization. Although Dr. Yudowitz suggested a three month recuperative period followed by an attempt to return to work, Agresti continued to be treated by Dr. Yudowitz as well as by his associate John Sciretta, a psychiatric social worker. In a letter dated January 17, 1983, Mr. Sciretta stated that since Agresti's discharge from the pain clinic, she continued to suffer severe depressive symptoms and "is unable to deal with any external stress at the time. She is not a candidate for employment at this time as this could lead to a serious worsening of these symptoms." (Tr. 257)

While an Administrative Law Judge is not required to defer to the diagnoses of treating physicians, *Sitar v. Schweiker,* 671 F.2d 19, 22 (1st Cir.1982), he is required to acknowledge them. Though the above recitation does not exhaust the medical evidence in Agresti's file, it highlights her problems. Nowhere—literally nowhere—in the four and one-quarter page decision of the Administrative Law Judge is there an indication that he read or even considered any of the documentation outlined above.

■ An Administrative Law Judge cannot simply ignore uncontroverted medical evidence that a claimant suffers from pain having its origin in a psychological disorder. *Reinhart v. Secretary,* 733 F.2d 571, 572–573 (8th Cir.1984), as cited in *Melon v. Heckler,* 739 F.2d 1382, 1383 (8th Cir.1984). Where genuine musculoskeletal pain exists accompanied by psychological disorders which result in an elaboration or increase in the pain from "psychological overlay," somatization, hysteria, or conversion reaction, the Administrative Law Judge must

decide to what degree this psychological condition affects the plaintiff's case. *Cf. Mellon v. Heckler,* 739 F.2d 1382, 1383 (8th Cir.1982); *Jacobs v. Heckler,* 595 F.Supp. 735, 736 (D.Maine 1984). Despite the above evidence, the only psychological condition which Administrative Law Judge Bennett found was that Agresti suffered from "depression, mild." (Tr. 17)

■ The Court concludes that because the report of Dr. Schneider, as the non-examining Medical Advisor, constituted the sole basis of Administrative Law Judge Bennett's decision to find Agresti able to perform her past work, his decision is not based on substantial evidence. In fact, the force of substantial evidence contradicts his finding. In this Circuit a non-examining physician's report will be given some evidentiary weight. *Rodriguez v. Secretary of HHS,* 647 F.2d 218, 223–224 (1st Cir.1981); *Browne v. Richardson,* 468 F.2d 1003, 1006 (1st Cir.1972). It should not, however, form the sole basis for the Secretary's decision. *Rodriguez v. Secretary of HHS,* 647 F.2d at 223.

This Court has refused to designate such reports "substantial evidence" where they were contradicted by reports of examining physicians which were rejected without careful analysis and adequate justification. *See Rosa v. Secretary of HHS,* 547 F.Supp. 712, 716 (D.Mass.1982) (The opinions of non-examining physicians "which to a critical extent differ from those of the examining physicians must be discounted when contradicted by the examining physician's views"); *see also Nunez v. Secretary of HHS,* 589 F.Supp. 785, 788 (D.P.R.1984) ("We believe that the opinion of the examining physician is entitled to substantially greater weight than that of the physician who never examined plaintiff but merely reviewed his medical record.")

Accordingly, the Court holds that where Dr. Schneider's report was used to deny benefits in the face of contradictory reports from examining physicians, Administrative Law Judge Bennett erred when he failed to evaluate evidence of Agresti's psychological impairment and its effect upon her complaints of pain and ability to function.

### IV. Conclusions

In general, questions of law are subject to much broader review than are factual findings. Here, where evidence has not been properly evaluated because of an error of law, the Secretary's determination must be set aside. *See e.g., Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir. 1982). The Court rules that the decision by the Secretary is not supported by substantial evidence. On the contrary, the record supports a finding that Agresti is disabled and cannot work. Accordingly, the Court holds that the decision of the Secretary must be REVERSED and ORDERS that the plaintiff Agresti be awarded Social Security Disability Insurance benefits.

SO ORDERED.